2009 OK 77

**BANK OF OKLAHOMA, N.A., a National Association, Plaintiff/Appellant**

v.

**RED ARROW MARINA SALES & SERVICE, INC., an Oklahoma corporation; Sullivan E. Johnson, an individual; Brad Carson, an individual; and Red Arrow, Inc., an Oklahoma corporation, Defendants/Appellees.**

**No. 104,651.**

Supreme Court of Oklahoma.

Oct. 13, 2009.

---

688

Paul DeMuro, J. Michael Medina, Frederic Dorwart, Lawyers, Tulsa, Oklahoma, for Plaintiff/Appellant.

Lewis N. Carter, Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, Oklahoma, for Defendants/Appellees Red Arrow Marina Sales & Service, Inc. and Sullivan E. Johnson.

Jack N. Herrold, David H. Herrold, Emily M. Jones, Herrold, Herrold & Co., P.C., Tulsa, Oklahoma, for Defendants/Appellees Brad Carson and Red Arrow, Inc.[1]

OPALA, J.

■ ¶1 Certiorari was granted to settle the first-impression question whether a creditor who does not impose liability on a mortgage debtor for the deficiency that remains after a foreclosure sale may maintain a suit against the debtor and other parties for fraud in the inducement of the loan that is secured by mortgage. In short, we are asked to decide whether the mortgage debt's satisfaction under Oklahoma's anti-deficiency statute[2] closes for a defrauded lender all other legal avenues of recovery. **We hold that it does not.**

■ ¶2 The statute's protection extends only to mortgage debtors. But even for debtors this protection is not absolute. A **lender's failure timely to seek imposition of deficiency liability will absolve borrowers of liability on the underlying debt, but will not free them from answering in damages for their fraudulent acts in the mort-** gage transaction. Though the debt's guarantor may in some instances derive some incidental benefit from the satisfaction of the underlying obligation, the anti-deficiency statute will not provide a shield against liability for anyone's fraudulent misrepresentations to a mortgage lender.

¶3 The trial court, though correct in finding that the mortgagor's liability on the mortgage debt stood extinguished by plaintiff's failure to seek deficiency recovery, erred in giving summary judgment to the other defendants on the bank's remaining claims. The statutory satisfaction of the mortgage debt, **standing alone,** is ineffective to defeat defendants' guaranty and fraud liability. The trial court also erred in denying plaintiff's quest for postjudgment relief by reconsideration of its earlier summary judgment.

■ ¶4 The Court of Civil Appeals affirmed in part and reversed in part the trial court's decision. Although we reach here the same result as that of the Court of Civil Appeals, we vacate that court's opinion to provide precedential guidance on a question of substantive law not previously determined by this court. We also re-emphasize this court's established jurisprudence holding that the outer reach of a guarantor's obligation must be determined by the precise terms of the guaranty agreement and of the law that governs that obligation, not by resort to the separate, distinct, and totally inapplicable protections of the mortgage debtor by the shield of the anti-deficiency statute.

## I.

### ANATOMY OF THE LITIGATION

¶5 Bank of Oklahoma (Bank) provided financing in 2000 for a $1,400,000 U.S. Small Business Administration loan to Red Arrow Marina Sales & Service, Inc. (Red Arrow Marina) for the purchase of a lakefront marina near Afton, Oklahoma then owned by Brad Carson (Carson) and Red Arrow, Inc.

1. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

2. 12 O.S.2001 § 686.

(collectively the Carson defendants). Evidenced by a promissory note, the obligation to the bank was secured by a mortgage on real property; a security agreement covering the marina's fixtures, inventory and equipment; and a guaranty for the full amount of the debt[3] given by Sullivan E. Johnson (Johnson), Red Arrow Marina's president. Neither Red Arrow Marina nor Johnson ever made a payment on the loan obligation in suit.

¶ 6 Upon default Bank brought suit against: (1) Red Arrow Marina on the promissory note and to foreclose both the mortgage and security interest, (2) Johnson on the guaranty agreement and (3) both Red Arrow Marina and Johnson for fraud in inducing Bank to make a loan it claims it would not have made had it not been for defendants' alleged misrepresentations. Bank later amended its petition to allege fraud against the Carson defendants as well, claiming they too had conspired to mislead Bank into extending the loan.[4] The thrust of Bank's fraud claim is that the marina's sellers, Carson and Red Arrow, Inc., and the marina's buyers, Johnson and Red Arrow Marina, **jointly undertook fraudulently to misrepresent the marina property's value and Johnson's ability to repay the loan.** Bank claims it was thereby misled into financing what amounted to an utterly sham transaction between Carson and Johnson.

■ ¶ 7 The trial court gave in 2001 judgment to Bank against Red Arrow Marina and Johnson on the note and guaranty and decreed foreclosure of the mortgage and security interest to satisfy the loan obligation.[5] The court held Bank's fraud claim in abeyance pending the outcome of the foreclosure sale. The sale's occurrence was long delayed: the foreclosed marina property failed to receive any bids at seven separate sheriff's sales conducted between 2002 and 2005 until finally selling for $280,000 at a public auction in November 2005.[6] The district court con-

---

3. The pertinent terms of the guaranty agreement are:
   UNCONDITIONAL GUARANTEE [sic]
   * * *
   1. GUARANTEE [sic]:
   Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee [sic] remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.
   2. NOTE:
   The "Note" is the promissory note dated May 18, 2000 in the principal amount of One Million Four Hundred Thousand and No/100 Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.
   * * *
   11. GUARANTOR ACKNOWLEDGMENT OF TERMS:
   Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee [sic], *including all waivers.*
   (emphasis added). Part V of this opinion discusses the guaranty's pertinent waivers.

4. Bank initially brought twin actions on its fraud claim, suing Red Arrow Marina and Johnson in Delaware County District Court and Carson in the United States District Court for the Northern District of Oklahoma. Bank's federal court claim was dismissed due to Bank's failure to join parties necessary to the action—Red Arrow Marina, Johnson, and Red Arrow, Inc.—under Rule 19, Federal Rules of Civil Procedure. Bank then amended its fraud claim in its state court action to include Carson and Red Arrow, Inc. as defendants.

5. The trial court's order is memorialized in a document entitled "Order Granting Motion for Partial Summary Judgment." It is more properly to be regarded as a decree of foreclosure for want of payment under the terms of the mortgage agreement. A decree of foreclosure holds a defendant in default for want of payment by first determining the amount in default and then declaring the mortgage foreclosed and the property subject to sale. *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.,* 1996 OK 125, ¶ 7, 932 P.2d 1100, 1103; *Sooner Fed. Sav. & Loan Ass'n v. Okla. Cent. Credit Union,* 1989 OK 170, ¶ 17 n. 18, 790 P.2d 526, 530 n. 18. The trial court's decree addressed only Red Arrow Marina's and Johnson's note and guaranty liability and expressly reserved for later adjudication Bank's fraud claim. In other words the trial court withheld judgment on Bank's fraud claim while resolving solely the mortgagor's liability on the note and the guarantor's liability on the guaranty through its decree of foreclosure of the property securing the defaulted loan.

6. The marina property was appraised by order of the district court four times between 2002 and 2005. Though initially appraised for the first foreclosure sale at a value of $1,585,000, each

firmed the sale the following month. Although the amount realized from the sale fell far short of satisfying the full amount of the mortgaged debt, **Bank did not seek judicial determination of the deficiency's [7] amount due the creditor as authorized by the terms of** 12 O.S.2001 § 686.[8]

¶ 8 In 2006—nearly one year after the sale—Bank filed a notice of renewal of the judgment obtained against Red Arrow Marina and Johnson five years earlier that

decreed foreclosure of the mortgaged property.[9] All defendants moved for summary judgment, arguing that the statutory satisfaction of the mortgage debt *in toto* that followed, as a matter of law, Bank's failure to obtain a deficiency determination [10] absolved them of any further liability on the guaranty and fraud claims. The trial court gave summary judgment to all defendants. Plaintiff then unsuccessfully pressed the trial court for reconsideration of its summary disposition.[11] The Court of Civil Appeals, Division

subsequent appraisal indicated a significant decline in the property's worth. The final appraisal, conducted in February 2005, showed the value of the property as $350,000.

7. A deficiency is defined as "[t]he amount still owed when the property secured by a mortgage is sold at a foreclosure sale for less than the outstanding debt; [especially], the shortfall between the proceeds from a foreclosure sale and an amount consisting of the principal debt plus interest plus the foreclosure costs." Black's Law Dictionary at 455 (8th ed.2004). A so-called "deficiency judgment" is defined as "[a] judgment against a debtor for the unpaid balance of the debt if a foreclosure sale or a sale of repossessed personal property fails to yield the full amount of the debt due." Black's Law Dictionary at 859 (8th ed.2004).

8. The terms of 12 O.S.2001 § 686, supra note 2, provide in pertinent part:

> In actions to enforce a mortgage, deed of trust, or other lien or charge, a personal judgment or judgment or judgments shall be rendered for the amount or amounts due * * *. Notwithstanding the above provisions no judgment shall be enforced for any residue of the debt remaining unsatisfied as prescribed by this act after the mortgaged property shall have been sold, except as herein provided. Simultaneously with the making of a motion for an order confirming the sale or in any event within ninety (90) days after the date of the sale, the party to whom such residue shall be owing may make a motion in the action for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought * * *. If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist.

12 O.S.2001 § 686 is known as the "anti-deficiency statute":

> This is so because in mortgage foreclosure actions, when a creditor fails to seek an order determining a deficiency on the judgment within 90 days after foreclosure sale, the mortgagor's liability may be considered to have

terminated by fictional satisfaction of the mortgage debt.
*Founders Bank & Trust Co. v. Upsher,* 1992 OK 35, ¶ 3 n. 4, 830 P.2d 1355, 1359 n. 4.

9. The terms of 12 O.S.2001 § 735, Oklahoma's so-called "dormancy statute," provide that a judgment not executed upon within five years of the date of judgment shall become unenforceable and of no effect if, among other things, a notice of renewal of judgment is not timely filed. In this case Bank's filing of the "notice of renewal of judgment" served as a precautionary measure to protect the judgment entered against the debtor and guarantor in the decree of foreclosure from lapse through the passage of time.

10. We do not refer to the deficiency determination as a "deficiency judgment." The term is a misnomer. There can be only one "judgment" on a single cause of action. *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., supra* note 5, at ¶ 8 n. 6, at 1104 n. 6; *Founders Bank & Trust Co. v. Upsher, supra* note 8, at ¶ 5 n. 8, at 1360 n. 8; *Fed. Deposit Ins. Corp. v. Tidwell,* 1991 OK 119, ¶ 2, 820 P.2d 1338, 1343 (Opala, C.J., concurring in result). In a foreclosure proceeding the single judgment is the court's determination of the amount due the creditor and its order that the encumbered property be sold to satisfy the mortgage lien. *Neil,* at ¶ 8 n. 6, at 1104 n. 6; *Upsher,* at ¶ 5 n. 8, at 1360 n. 8.

Though at common law a deficiency automatically sprang into existence without judicial intervention, our modern statutory scheme "mandates a hearing and a determination of deficiency in accordance with the statutory formula" detailed in 12 O.S.2001 § 686. *Neil,* at ¶ 9, at 1104. The deficiency is thus a creature of post-judgment process. Although a deficiency determination may have the effect of a judgment for some purposes, it is in the strict sense a post-judgment order determining a deficiency on a judgment previously rendered. *Neil,* at ¶ 8 n. 6, at 1104 n. 6; *Upsher,* at ¶ 5 n. 8, at 1360 n. 8; *Tidwell,* at ¶ 5, at 1341; *Jones v. England,* 1989 OK 142, ¶ 10, 782 P.2d 119, 121; *Baker v. Martin,* 1975 OK 112, ¶ 25, 538 P.2d 1048, 1051.

11. A "motion for reconsideration" is a relatively new arrival in the lexicon of Oklahoma trial

I, affirmed the trial court's judgment in favor of the defendant mortgagor Red Arrow Marina [12] but reversed that given for the other defendants on the remaining guaranty and fraud claims. We granted certiorari to determine and define by a precedential pronouncement the breadth of the protection afforded by Oklahoma's anti-deficiency statute.

## II.

### STANDARD OF REVIEW

¶9 Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes [13]—is a search for undisputed material facts which, without resort to forensic combat, may be utilized in the judicial decision-making process.[14] A court may grant summary judgment only when neither genuine issues of material fact nor any conflicting inferences that may be drawn from uncontested facts

are in dispute and the law favors the moving party's claim or liability-defeating defense as a result of which the moving party becomes entitled to judgment as a matter of law.[15] Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim (or of the defense) afford legitimate support for a trial court's use of summary process for a claim's adjudication, partial or total.[16]

¶10 Issues in summary process stand before us for *de novo* review.[17] All facts and inferences tendered in a summary proceeding must be viewed in the light most favorable to the non-moving party.[18] Just as trial courts must decide whether summary judgment is proper in the first instance, so too must appellate courts undertake an independent and non-deferential *de novo* review when testing the legal sufficiency of all evidentiary materials proffered by the parties in their quest for or in the defense against summary relief.[19] If no material fact or in-

practice and procedure. If timely filed it effectively functions as a motion for new trial. *Halliburton Oil Producing Co. v. Grothaus*, 1998 OK 110, ¶6 n. 6, 981 P.2d 1244, 1248 n. 6. Although summary judgment, which is a determination that there shall be no trial at all, is perhaps semantically inconsistent with the notion of a "new trial," our statutory scheme for postjudgment relief nevertheless authorizes a "new trial" to arise from a reconsideration of the judgment.

12. Bank did not urge error in the trial court's dismissal of its claims against Red Arrow Marina. Part VI of this opinion discusses the effect of Bank's failure to include that error.

13. "'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Okla. Mem'l Hosp.*, 1995 OK 112, ¶15 n. 35, 909 P.2d 765, 773 n. 35. *See also Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶¶ 16–17, 894 P.2d 1077, 1080–81; *Davis v. Leitner*, 1989 OK 146, ¶15, 782 P.2d 924, 927.

14. The focus in summary process is not on the facts that might be proven at trial, but rather on whether the evidentiary material in the record tendered in support of summary disposition reveals only undisputed material facts supporting but a single inference that favors the movant's quest for relief. *Polymer Fabricating, Inc. v. Employers Workers' Comp. Ass'n*, 1998 OK 113, ¶8, 980 P.2d 109, 113; *Hulsey v. Mid–America Preferred Ins. Co.*, 1989 OK 107, ¶8 n. 15, 777 P.2d 932, 936 n. 15.

15. In determining the appropriateness of summary relief the court may consider, in addition to the pleadings, items such as depositions, affidavits, admissions, and answers to interrogatories, as well as other evidentiary materials which are offered in acceptable form without objection from other parties or are admitted over the challenging exception. *Polymer Fabricating, Inc. v. Employers Workers' Comp. Ass'n, supra* note 14, at ¶8, at 113. *See also Seitsinger v. Dockum Pontiac, Inc., supra* note 13, at ¶¶ 16–17, at 1080–81.

16. *Russell v. Bd. of County Comm'rs*, 1997 OK 80, ¶7, 952 P.2d 492, 497. *See also Gray v. Holman*, 1995 OK 118, ¶11, 909 P.2d 776, 781.

17. An order granting summary relief, in whole or in part, disposes solely of questions of law reviewable by a *de novo* standard. *Brown v. Nicholson*, 1997 OK 32, ¶5, 935 P.2d 319, 321. "Issues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary independent and non-deferential authority to reexamine a trial court's legal rulings." *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶14, 859 P.2d 1081, 1084 (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)).

18. *Carmichael v. Beller*, 1996 OK 48, ¶2, 914 P.2d 1051, 1053.

19. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court).

ference derived from the materials stands in dispute, the movant is entitled to summary judgment if the law favors the moving party's claim or liability-defeating defense.[20]

¶ 11 A trial court's denial of a motion for new trial—here denominated erroneously as a motion for reconsideration of the judgment—is reviewed for abuse of discretion.[21] Where, as here, our assessment of the trial court's exercise of discretion in denying plaintiff a new trial rests on the propriety of the earlier summary judgment, we settle the abuse-of-discretion question by a *de novo* review of the summary adjudication's correctness.[22] A trial court abuses its discretion when it errs with respect to a pure, unmixed question of law.[23]

## III.

## THE COURT OF CIVIL APPEALS' OPINION AND THE PARTIES' ARGUMENTS ON CERTIORARI

¶ 12 The Court of Civil Appeals (COCA) affirmed in part and reversed in part the judgment of the trial court. COCA held that the absence from the record of an adjudicated deficiency extinguished Red Arrow Marina's debt but that the anti-deficiency statute's provisions did not also bar Bank's claims against the remaining defendants for guaranty and fraud liability. In affirming in part the trial court's judgment COCA relied on this court's well-settled jurisprudence holding that the failure timely to obtain a deficiency amount's determination releases the **mortgagor** from further liability **on the mortgage debt.**[24] COCA next correctly evaluated the issue of Johnson's guaranty liability by looking strictly to the terms of the guaranty agreement. COCA determined that Bank's decision to forgo imposing deficiency liability on Red Arrow Marina did not *eo ipso*[25] discharge Johnson's separate guaranty obligation.

¶ 13 COCA's interpretation of the anti-deficiency statute also demanded reversal of the summary judgment given by the trial court to defendants on Bank's fraud claim. COCA held that the terms of the anti-deficiency statute provide only for the satisfaction of the amount of the mortgagor's debt left outstanding after a foreclosure sale. Because a suit for fraud—stemming from a separate harm with an entirely distinct measure of damages—presents a wholly different claim from a suit on the mortgage debt, COCA held that plaintiff's failure to seek deficiency recovery did not operate to defeat its fraud claim.

¶ 14 On certiorari defendants argue that COCA erred in its interpretation of both the guaranty agreement and the anti-deficiency statute.[26] All defendants assert that

---

**20.** The purpose of summary process is not to deprive parties of their right to have the disputed facts of the case tried by a jury, but rather to decide the legal sufficiency of the evidentiary materials presented to determine whether a triable case is tendered. *Bowman v. Presley,* 2009 OK 48, ¶ 7, 212 P.3d 1210, 1216; *State ex rel. Fent v. State ex rel. Okla. Water Res. Bd.,* 2003 OK 29, ¶ 14 n. 31, 66 P.3d 432, 440 n. 31; *Bowers v. Wimberly,* 1997 OK 24, ¶ 18, 933 P.2d 312, 316; *Stuckey v. Young Exploration Co.,* 1978 OK 128, ¶ 15, 586 P.2d 726, 730.

**21.** *Reeds v. Walker,* 2006 OK 43, ¶ 9, 157 P.3d 100, 106–07; *Head v. McCracken,* 2004 OK 84, ¶ 2, 102 P.3d 670, 673; *Jones, Givens, Gotcher & Bogan, P.C. v. Berger,* 2002 OK 31, ¶ 5, 46 P.3d 698, 701.

**22.** *Reeds v. Walker, supra* note 21, at ¶ 9, at 107; *Head v. McCracken, supra* note 21, at ¶ 2, at 673–74; *Evers v. FSF Overlake Assocs.,* 2003 OK 53, ¶ 6, 77 P.3d 581, 584.

**23.** *Reeds v. Walker, supra* note 21, at ¶ 9, at 107; *Christian v. Gray,* 2003 OK 10, ¶ 43, 65 P.3d 591, 608; *Jones, Givens, Gotcher & Bogan, P.C. v. Berger, supra* note 21, at ¶ 5, at 701.

**24.** *E.g., Riverside Nat'l Bank v. Manolakis,* 1980 OK 72, ¶ 10, 613 P.2d 438, 441 (stating that "the protection of § 686 applies only to debtors").

**25.** "By that very act." Black's Law Dictionary at 575 (8th ed.2004).

**26.** In his petition for certiorari Johnson presses for review only the portion of COCA's decision dealing with his guaranty liability. It is beyond this court's power to grant relief from issues resolved by COCA but not explicitly pressed for certiorari review. *Nealis v. Baird,* 1999 OK 98, ¶ 61, 996 P.2d 438, 462. We hence leave undisturbed as the settled law of the case COCA's determination that Bank's fraud claim may proceed against Johnson and thus limit our review to the issues explicitly before us as submitted by certiorari petition: Johnson's guaranty liability and the potential fraud liability of the Carson defendants.

COCA decided the case in a way likely not in accord with previous decisions by this court. First, Johnson claims that the terms of his guaranty contract allow him to avoid his obligation through Bank's omission to seek deficiency recovery. Johnson urges a reading of the guaranty that preserves his liability-defeating defenses against enforcement of the debt based on the absence of a deficiency adjudication.

¶ 15 Secondly, Carson and Red Arrow, Inc. assert that Bank's fraud claim is untenable *sans* an antecedent judicial determination of deficiency. The Carson defendants argue that the amount of deficiency provides the measure of damages for fraud. Consequently the failure to obtain a deficiency determination renders Bank's fraud damages unprovable and hence destroys its claim. The Carson defendants also urge that COCA's decision conflicts with the opinion of another division of the Court of Civil Appeals in *First United Bank & Trust Co. v. Wiley.*[27] According to the Carson defendants, the *Wiley* decision correctly construes the anti-deficiency statute to eliminate a court's power to consider any claim based on a deficiency—including, as defendants argue here, a suit for fraud the damages of which are to a large extent measured by the amount of deficiency—whenever a lender fails timely to obtain a deficiency adjudication. The Carson defendants' reading of *Wiley*, if correct, is in obvious discord with COCA's holding in this case and would also prompt a reexamination of this court's jurisprudence concerning a guarantor's continuing liability for a debt after the release of the mortgage debtor from deficiency liability.

¶ 16 For its part, Bank argues that COCA correctly reversed the trial court's summary judgment for defendants on its guaranty and fraud claims. Bank counters Johnson's arguments by urging a broad construction of the guaranty agreement's waivers of liability-defeating defenses. Emphasizing the correctness of COCA's decision, Bank asserts that: (1) because the decision in *Wiley* did not involve a creditor's tort claims against a third party, no interdivisional conflict exists within the Court of Civil Appeals on the anti-deficiency statute's interpretation; (2) the anti-deficiency statute governs only the relationship between a mortgage debtor and creditor, not that between creditors, guarantors, and tortfeasors; and (3) the anti-deficiency statute does not absolve defendants of the consequences of their fraudulent acts when a mortgagee omits to impose deficiency liability on a mortgage debtor.

## IV.

## THE ANTI–DEFICIENCY STATUTE MAY NOT BE INTERPOSED AS A DEFENSE AGAINST A FRAUD CLAIM

¶ 17 The question of first impression tendered on certiorari is whether a mortgagee's failure to seek a deficiency determination against a mortgagor ever can defeat the mortgagee's separate claim against the mortgage debtor, the guarantor or a third-party defendant for fraud in the inducement of the loan. We answer this question in the negative. **No legal principle will allow the defeat of a fraud claim against any party by interposition of the mortgagee's failure timely to impose deficiency liability on the mortgagor.**

¶ 18 The anti-deficiency statute[28] addresses itself **exclusively** to the relationship between mortgage creditor and debtor,[29] and its protection applies to the debtor alone.[30] But the statute's protection of the mortgage debtor is not absolute. Its benefit avails to the debtor only insofar as a mortgagee may seek to recover a deficiency (rendered unreasonable as a matter of law) by the creditor's untimeliness. In such instanc-

**27.** 2008 OK CIV APP 39, 183 P.3d 1022.

**28.** 12 O.S.2001 § 686, supra note 2. In-text references to the statute hereinafter refer to its section number only.

**29.** "Our anti-deficiency statute, § 686, addresses itself exclusively to the creditor/debtor relationship." *Riverside Nat'l Bank v. Manolakis, supra* note 24, at ¶ 10, at 441.

**30.** This court has unequivocally stated that "the protection of § 686 applies only to debtors." *Riverside Nat'l Bank v. Manolakis, supra* note 24, at ¶ 10, at 441.

es the provisions of § 686 will discharge a mortgagor from further liability on the mortgage debt—but not on a separate fraud claim. Having achieved its well-defined aim, the statute cannot then be pressed into service as a defense against a fraud claim that seeks a separate recovery for an entirely different legal harm. To read § 686 as absolving defendants of liability for their misrepresentations is to force upon the statute a construction wholly unrelated to its limited and specific purpose. **Fraud claims exist nowhere within the statute's ambit.**

¶ 19 The Oklahoma Legislature amended § 686 in 1941 to add the statute's current anti-deficiency language. Adopted in the wake of the Great Depression, the anti-deficiency statute sought to protect mortgage debtors from personal liability after foreclosure sales conducted at a time of greatly deflated land values in a depressed economy.[31] The anti-deficiency provision evolved as a direct legislative response to the plight of mortgage debtors rendered vulnerable to burdensome deficiency liability in harsh economic circumstances. A corrective measure derived from a depression-era desire to ease the burden of displaced mortgagors cannot be invoked today to absolve defendants of liability for fraud.

¶ 20 Defendants urge that the absence of a deficiency adjudication removes the basis for measuring damages for Bank's fraud claim. Damages suffered as a natural and probable consequence of a plaintiff's reliance on a defendant's misrepresentations are an indispensable element of proving a claim of fraud.[32] In contending that Bank voluntarily surrendered its right to maintain a fraud claim by its failure to impose deficiency liability on the mortgagor, **defendants mistakenly conflate the statutory satisfaction of a mortgage debt with recovery for damages in fraud. Deficiency liability and fraud damages are different remedies born** of separate legal injuries, each with a distinct and independent measure of damages to satisfy the alleged harm.

¶ 21 The amount of the deficiency does not automatically establish the proper measure of damages for Bank's fraud claim. Bank's omission to impose deficiency liability on Red Arrow Marina resulted only in the extinguishment of the recovery claim it could have obtained against its debtor in the amount of an adjudicated deficiency. The omission did not simultaneously eliminate its potentially recoverable damages in a different fraud claim because § 686 contemplates no more than the full satisfaction of the mortgage debt.

¶ 22 **Plaintiff in a fraud action does not seek satisfaction of the mortgage debt.** Rather, it seeks compensation for a tortious wrong. The fraud claim stands completely apart from the mortgage debtor's now-satisfied obligation on the note. **Bank's quest for fraud recovery may not now be frustrated by interposition of a statute wholly inapplicable to the satisfaction of the harm remediable only in tort.**

¶ 23 The question of Bank's damages in fraud cannot be settled merely by looking to the amount Bank could have obtained from the debtor after a deficiency determination. The trial court must instead evaluate the extent to which Bank suffered injury, if any, by making a $1,400,000 loan in reliance upon defendants' alleged misrepresentations. Upon proving all the elements necessary to establish fraud a party may recover the difference between the actual value of the property encumbered by mortgage and the security value it would have received had that value been exactly as represented.[33] On remand Bank might also press its damages in terms of the value it reasonably believed it would realize from the sale of mortgaged property had it not been for defendants' al-

**31.** *Riverside Nat'l Bank v. Manolakis, supra* note 24, at ¶ 7, at 440; *see also Founders Bank & Trust Co. v. Upsher, supra* note 8, at ¶ 3 n. 4, at 1359 n. 4.

**32.** *LeFlore v. Reflections of Tulsa, Inc.*, 1985 OK 72, ¶ 31, 708 P.2d 1068, 1076; *State ex rel. Southwestern Bell Tel. Co. v. Brown*, 1974 OK 19, ¶ 19, 519 P.2d 491, 495; *McGuigan v. Harris*, 1968 OK 58, ¶ 11, 440 P.2d 680, 682; *Sharp v. Keaton*, 1926 OK 335, ¶ 0, 245 P. 852 (First Syllabus by the Court).

**33.** *LeFlore v. Reflections of Tulsa, Inc., supra* note 32, at ¶ 36, at 1077.

leged misrepresentation of the mortgaged property's value.

¶ 24 We neither opine on the merits of plaintiff's fraud claim nor speculate on the ability of defendants to marshal on remand successful liability-defeating defenses against it. The precise computation of damages—and Bank's ultimate success or failure in proving them—stands beyond the reach of this court's present review. **We simply hold that the anti-deficiency statute does not afford a defense against Bank's fraud claim.**[34]

¶ 25 Lastly we dispense with defendants' contention that COCA's decision conflicts with that pronounced by another COCA division in *First United Bank & Trust Co. v. Wiley.*[35] The Carson defendants mistakenly ascribe to *Wiley* a meaning that strays far beyond the court's actual holding in the case. To give full effect to defendants' interpretation would also impermissibly clash with this court's extant jurisprudence holding that the satisfaction of a mortgage debt under § 686 does not *eo ipso* defeat a mortgagee's claim against a guarantor to recover the amount of the obligation left outstanding.[36]

¶ 26 The plaintiff bank in *Wiley*, having failed timely to seek a deficiency determination, argued that the defendant mortgagor had waived his right to claim § 686's protection after he had initially neglected to raise the bank's delay as a defense against liability.[37] In accord with earlier pronouncements by this court the COCA panel in *Wiley* cor-

rectly held that the anti-deficiency statute is not an ordinary statute of limitations, but rather a condition upon a mortgagee's exercise of the right to obtain a deficiency determination.[38] A statute of limitations is a remedial time bar. The time bar on lodging motions for deficiency determination, which is a condition upon the exercise of a right, is a substantive-law deadline. **It destroys the right rather than the remedy.**

¶ 27 A mortgage debtor can interpose the protection of § 686 at any time because compliance with the statute's time limit is an absolute prerequisite for a mortgagee's ability subsequently to obtain a **valid** deficiency determination. But defendants appear to urge a reading of *Wiley* that would eliminate a court's power to adjudicate **any** claim—including claims against parties other than the mortgagor—based in some part on a creditor's failure in timely receiving satisfaction from the mortgage debtor. From the outset defendants' argument is unavailing. **Bank's fraud claim does not depend for its viability upon the existence or nonexistence of a deficiency.** It is not a disingenuous attempt to recover a statutorily extinguished deficiency cloaked in a suit for fraud. It is a completely independent claim the satisfaction of which is neither based on nor measured by the deficiency left unrecovered by operation of § 686. Damages from fraud do not and need not reflexively mirror the amount of deficiency. For this reason alone defendants' reliance on *Wiley* is misplaced.

---

34. For a similar conclusion to that reached here see *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 44 Cal.Rptr.2d 352, 900 P.2d 601 (1995); *Tretheway v. Miracle Mortgage, Inc.*, 995 P.2d 599 (Utah 2000) (interpreting New Mexico law).

35. 2008 OK CIV APP 39, 183 P.3d 1022, supra note 27.

36. *Riverside Nat'l Bank v. Manolakis, supra* note 24, at ¶ 8, at 440.

37. *First United Bank & Trust Co. v. Wiley, supra* note 27, at ¶ 9, at 1026.

38. *First United Bank & Trust Co. v. Wiley, supra* note 27, at ¶ 32, at 1031. This court has previously explained the difference between a statute of limitations and a condition upon the exercise of a right, stating that:

The common law recognizes *two different* time bars that are conceptually distinct: [1] an "ordinary" or "true" statute of limitations that regulates the time to *bring* an action and [2] a time limit that establishes a condition upon the right or constitutes a substantive element of the claim. * * * [A] time bar falling into the category of a condition upon the right is a substantive element of the claim and cannot be tolled. It differs vastly from a statute [of limitations] that regulates merely the time for the commencement of an action. This is so because it operates to extinguish the *right* as well as the *remedy* and in so doing it may also transfer an interest lost by time lapse. Time bars in this category do not merely destroy the claim but also confer a new right on one who may invoke the benefit of the lapse.

*In re Estate of Speake*, 1987 OK 61, ¶ 13, 743 P.2d 648, 652–53.

¶ 28 But defendants also stretch the holding in *Wiley* beyond what this court's jurisprudence allows. The opinion in *Wiley* contains language to the effect that a mortgagee's failure to comply with § 686's requirements will eliminate a court's jurisdiction "to consider a deficiency."[39] This statement is correct only insofar as it applies to extinguishing the **mortgagor's** debt and does not extend to the separate liability of guarantors and others whose obligation to the mortgagee stands independently of the underlying mortgage debt. Defendants may not reap the benefit of *Wiley's* imprecise language to suggest that claims tangentially related to the mortgage debt automatically dissolve in the absence of a timely deficiency adjudication. If the mortgagee does not timely seek deficiency adjudication against the mortgagor, the mortgagor is exonerated by the mortgagee's inaction from post-sale liability **only on the mortgage debt. Between those parties, in contemplation of law, no deficiency liability may survive the sale.**

¶ 29 Because the benefits of § 686 inure exclusively to the mortgage debtor, the same principle does not apply to a mortgagee's claims against a guarantor or against defendants in a suit for fraud. This court has previously held that the satisfaction of a mortgage debt under § 686 will not *eo ipso* discharge a mortgagee's claim to recover the debt assumed by the guarantor.[40] The reading of *Wiley* pressed by defendants would permit the absence of a deficiency determination to absolve guarantors and others whose obligations to the lender exist independently of the self-contained creditor-debtor relationship and the statute that governs it, § 686.

¶ 30 This court's prior jurisprudence will not countenance such a result. We expressly reject any interpretation of *Wiley's* language suggesting otherwise. Although we today reaffirm our previous statements defining § 686 not as a statute of limitations but as a condition upon the exercise of a right,[41] we limit the scope of that right to encompass only the purpose served and the party protected by the anti-deficiency statute. The proper purpose served by § 686 is to extinguish a mortgage debt *in toto* if its continued existence is claimed after a mortgagee fails timely to obtain a deficiency determination. The sole party protected by § 686 is the mortgage debtor **insofar as the debtor stands in the capacity of a mortgagor, not as a fraud defendant.**

¶ 31 By operation of the anti-deficiency statute Bank can no longer recover a deficiency from the mortgagor. With this the statute has achieved its single purpose: the protection of the mortgage debtor from the untimely imposition of deficiency liability. But the Bank also alleges it has been injured in a way distinct from that measured by the residue of a mortgage debt left unsatisfied after a foreclosure sale. It claims it has been harmed by its reliance upon defendants' fraud, a separate and independent harm the satisfaction of which falls outside the scope of the anti-deficiency statute. A plaintiff's recovery upon a valid claim may not be frustrated by a defendant who interjects as a liability-defeating defense an incongruous statute in no way applicable to determining the remedy plaintiff invokes. We hold that the anti-deficiency statute cannot be interposed as a defense to defeat Bank's fraud claim.

**39.** *First United Bank & Trust Co. v. Wiley, supra* note 27, at ¶ 25, at 1030.

**40.** *Riverside Nat'l Bank v. Manolakis, supra* note 24, at ¶ 8, at 440.

**41.** "We prefer to view the § 686 bar as a condition upon the exercise of a right. Unless deficiency is timely sought the mortgagee's debt is deemed satisfied, through the use of legal fiction, by the proceeds from the sale of the specific mortgaged property." *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., supra* note 5, at ¶ 9 n. 10, at 1104 n. 10 (citations omitted). "Section 686 by its express language is more than a statute of limitation. It specifically discharges and extinguishes the debt." *Apache Lanes, Inc. v. Nat'l Educators Life Ins. Co.,* 1974 OK 106, ¶ 13, 529 P.2d 984, 986 (a later appeal in this cause, involving different issues, is found in *Nat'l Educators Life Ins. Co. v. Apache Lanes, Inc.,* 1976 OK 121, 555 P.2d 600). *Accord Ingerton v. First Nat'l Bank & Trust Co. of Tulsa,* 291 F.2d 662, 665 (10th Cir.1961) (interpreting § 686 as extinguishing the right to a "deficiency judgment" after the lapse of the prescribed 90-day period), later appeal on another issue, 303 F.2d 439 (10th Cir.1962); *Int'l Paper Co. v. Whitson,* 595 F.2d 559, 562 (10th Cir.1979).

## V.

### THE TERMS OF THE GUARANTY AGREEMENT AT ISSUE DO NOT BY THEMSELVES ABSOLVE THE GUARANTOR OF LIABILITY

■ ¶ 32 Johnson contends that the agreement's terms preclude Bank from seeking recovery on the guaranty when a deficiency is not timely sought. In effect Johnson argues that no part of the guaranty contract waives his right to raise Bank's omission as a defense against his continued liability on the debt. We disagree. The guaranty at issue contains wholesale waivers of defenses that militate strongly against ruling here that, as a matter of law, plaintiff's claim against the guarantor cannot go forward.

■ ¶ 33 A guaranty[42] arising from a contractual obligation distinct and separate from the principal debt is governed by statutory provisions unrelated to those of § 686.[43] Because "the protection of § 686 applies only to [mortgage] debtors,"[44] that statute's satisfaction of the mortgage debt cannot **automatically** discharge guarantors from further liability on their independent and separate guaranty obligations.[45] The question whether a guarantor's liability survives in the absence of a deficiency determination will be decided by reference to the precise terms of the guaranty itself.[46]

■ ¶ 34 The terms of the guaranty agreement define the specific nature of the promise exacted from the guarantor and thus determine both the scope of the guarantor's liability and the available defenses the guarantor may raise against that liability. **As the specially protected beneficiaries of the anti-deficiency statute, mortgage debtors cannot contract away that statute's protection.[47] The guarantor is not so constrained.** A consenting guarantor may waive the protections provided by the separate statutory scheme regulating guaranty contracts. Such waivers as may exist will be ascertained from the express terms of the agreement.

■ ¶ 35 The breadth of the guaranty agreement, purely contractual in nature, must be ascertained according to established principles of contract interpretation.[48] The intent of the parties at the time of the contract's formation, as expressed within the four corners of the document, controls the

42. The terms of 15 O.S.2001 § 321 define a guaranty as "a promise to answer for the debt, default or miscarriage of another person."

43. In *Riverside Nat'l Bank v. Manolakis, supra* note 24, at ¶ 10, at 441, we explained that:
Our anti-deficiency statute, § 686, addresses itself exclusively to the creditor/debtor relationship. It does not deal with the more complex, tripartite relationship of guarantor/debtor/creditor or with the rights under a guaranty agreement. The obligations in the latter category are regulated by the distinctly unrelated and separate provisions of 15 O.S. [2001] §§ 321–344.

44. *Riverside Nat'l Bank v. Manolakis, supra* note 24, at ¶ 10, at 441. "[W]e absolutely reject the notion that the benefits of a § 686 discharge automatically avail to a guarantor." *Riverside*, at ¶ 8, at 440. "Although a creditor's failure to seek a deficiency recovery may impair a guarantor's right to proceed against the principal debtor, it does not follow that a guarantor is automatically discharged in every case. That must, of course, depend on the nature of the guarantor's undertaking." *Riverside*, at ¶ 10, at 441.

45. "A guarantor's undertaking * * * creates a collateral obligation independent and separately enforceable from that of the principal debtor." *Riverside Nat'l Bank v. Manolakis, supra* note 24, at ¶ 9, at 441; *see also Founders Bank & Trust Co. v. Upsher, supra* note 8, at ¶ 9, at 1361.

46. "The obligation of a guaranty is contractual, and the inquiry must, in each case, focus on the precise terms of the guarantor's undertaking—the dimension or breadth of the promise." *Riverside Nat'l Bank v. Manolakis, supra* note 24, at ¶ 9, at 441. *see also Founders Bank & Trust Co. v. Upsher, supra* note 8, at ¶ 10, at 1361 (noting the "general rule that *obligations of a private-law guarantor are purely contractual* "); *Lum v. Lee Way Motor Freight, Inc.,* 1987 OK 112, ¶ 16, 757 P.2d 810, 815. The terms of 15 O.S.2001 § 154 provide that "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."

47. *Founders Bank & Trust Co. v. Upsher, supra* note 8, at ¶ 3 n. 4, at 1359 n. 4.

48. The terms of 15 O.S.2001 § 151 state that "All contracts, whether public or private, are to be interpreted by the same rules, except as otherwise provided by law."

meaning of the written contract.[49] Intent must be discerned from the entire instrument taken as a whole.[50] Where a contract is complete in itself and, as viewed in its entirety, contains clear and explicit language leaving it free of ambiguity, its language is the only legitimate evidence of what the parties intended.[51]

■■■ ¶ 36 This court has long adhered to the principle that a guaranty agreement should be interpreted in favor of the creditor—the party who has parted with property in reliance on the promise contained in the guaranty. In other words the terms of the guaranty agreement should be most closely construed against the guarantor,[52] whose collateral promise to answer for the debt of another in the event of default gives a lender the assurance needed to extend the loan. Guided by these established principles of guaranty interpretation, we determine that Johnson in fact gave a promise broad enough to waive the very defenses he now raises against liability.

¶ 37 Though a mortgagor's and guarantor's obligations are independent of each other, a creditor's failure to seek deficiency recovery may materially affect the guarantor's continued responsibility for the debt.[53] In this case plaintiff's failure to obtain a deficiency adjudication led to the total exoneration of Red Arrow Marina from all further liability on the note, simultaneously eliminating Johnson's ability to recover from Red Arrow Marina any amount relating to the debt. But the question in this case is not whether Bank's omission impaired the guarantor's future right to recover from the debtor. There can be no dispute that it did. The pertinent question is whether by the terms of his contract Johnson relinquished his right to complain of that omission, leaving him alone responsible for the unpaid residue of the debt.[54]

¶ 38 The terms of 15 O.S.2001 § 338 provide that a guarantor is exonerated from liability when any act of the creditor alters the debtor's obligation or impairs the creditor's rights against the debtor **without the guarantor's consent.**[55] The terms of 15 O.S. 2001 § 344 state that a guarantor is not exonerated by the release of the debtor absent some intervention or **omission** of the

49. The statutory rules for determining that intent are set out at 15 O.S.2001 §§ 151 through 157. The terms of 15 O.S.2001 § 152 provide that "A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."

50. The terms of 15 O.S.2001 § 157 provide that "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."

51. *Founders Bank & Trust Co. v. Upsher, supra* note 8, at ¶ 11, at 1362; *Mercury Inv. Corp. v. F.W. Woolworth Co.,* 1985 OK 38, ¶ 9, 706 P.2d 523, 529.

52. *Founders Bank & Trust Co. v. Upsher, supra* note 8, at ¶ 11, at 1362; *Riverside Nat'l Bank v. Manolakis, supra* note 24, at ¶ 13, at 442; *Rucker v. Republic Supply Co.,* 1966 OK 118, ¶ 9, 415 P.2d 951, 954 (per curiam); *First Nat'l Bank v. Cleveland,* 1927 OK 194, ¶ 0, 260 P. 80 (First Syllabus by the Court); *Lamm & Co. v. Colcord,* 1908 OK 216, ¶ 1, 98 P. 355, 356.

53. *See Apache Lanes, Inc. v. Nat'l Educators Life Ins. Co., supra* note 41, at ¶ 15, at 986–87.

54. Johnson also contends he should be absolved of liability on the guaranty as a matter of public policy, asserting that as Red Arrow Marina's owner his identity is inseparable from that of the mortgage debtor's. In effect Johnson argues that the protection of § 686 should be extended to dissolve the personal guaranty liability of **individuals** whose indebted **businesses** have been released from liability by operation of § 686. Because defendant's argument impermissibly blends two entirely distinct legal obligations—the guaranty and the mortgage debt—his argument does not avail him in his quest to escape guaranty liability. By signing the guaranty agreement Johnson undertook an obligation that existed wholly apart from, and could survive the extinguishment of, the mortgage debt. Commonalities of identity or association between one who obtains the loan and one who guarantees it cannot overcome the inherent separateness of the two obligations.

55. The terms of 15 O.S.2001 § 338 provide in full:

A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended.

creditor.[56]  Bank's omission altered Red Arrow Marina's obligation, impairing both Johnson's and its own right of recovery against that debtor.  The question whether Johnson **consented** to such omission will be resolved by reference to the unambiguous language of the contract.

¶ 39 The guaranty contract states that Bank could "delay or forgo enforcing any of its rights without losing or impairing any of them."  Though not the sole waiver embodied in the contract,[57] this clause is itself sufficient to defeat defendant's proffered defense against liability.  The imposition of deficiency liability on the mortgage debtor is a right inherent in the creditor's ability to recover the amount of a defaulted loan.  The mortgagee's right to seek deficiency recovery is ingrained both in the foreclosure process and the statute that regulates it, § 686.  By the guaranty's terms, Bank could choose to forgo that right **without impairing its ability to recover from the guarantor.**

¶ 40 Because in the absence of illegality a party may freely set the outer limit of the bargain, that party will be bound by the unambiguous terms of the contract even though the result may be harsh.[58]  Faced with the clear terms of the guaranty at issue, we cannot give a defendant the benefit of some other contract he in hindsight might wish he had made.  We can only interpret the plain language of the contract now before us.[59]  Through the express terms of the agreement Bank exacted from defendant a promise broad enough to ensure repayment even when, as here, Bank took or failed to take actions that ultimately impaired the guarantor's right of recourse against the mortgage debtor.

¶ 41 The effect of the contract's extensive waivers precludes defendant from interposing that impairment by Bank as a defense against his present liability on the debt.  Because defendant's right to this defense stands expressly waived by the unambiguously worded provisions of the contract, we need not say more about the contentions by which defendant seeks to avoid liability from the consequences of the loss of his waived rights.  Accordingly we remand this cause to the trial court for determination of all issues in post-remand proceedings in a manner consistent with today's opinion.

## VI.

### ISSUES NOT URGED AS ERROR ON BANK'S APPEAL OR BY PETITION FOR CERTIORARI ARE BEYOND THIS COURT'S POWER TO REVIEW AND HENCE STAND RESOLVED AS THE SETTLED LAW OF THE CASE

¶ 42 Plaintiff did not argue on appeal that the trial court erred in giving summary judgment to the mortgage debtor, Red Arrow Marina.  As the sole recipient of the anti-deficiency statute's protection, Red Arrow Marina was exonerated from further liability on the debt when Bank declined to impose on it deficiency liability within the statutorily prescribed time period.  Asserting that Red Arrow Marina had been insolvent since the time of its default in 2000, **Bank likewise did not appeal from the dismissal of its fraud claim against Red**

---

**56.**  The terms of 15 O.S.2001 § 344 provide in full:

A guarantor is not exonerated by the discharge of his principal by operation of law, without the intervention or omission of the creditor.

**57.**  Additional key provisions in the contract state that:

4.  LENDER'S GENERAL POWERS:
Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:
* * *
B.  Refrain from taking any action on the Note, the Collateral, or any guarantee [sic]* * *.
* * *

6.  RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:
To the extent permitted by law,
* * *
C.  Guarantor waives defenses based upon any claim that:
* * *
2.  Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral * * *.

**58.**  *Founders Bank & Trust Co. v. Upsher, supra* note 8, at ¶ 13, at 1362; *Cook v. Okla. Bd. of Pub. Affairs,* 1987 OK 22, ¶ 15, 736 P.2d 140, 147.

**59.**  *Founders Bank & Trust Co. v. Upsher, supra* note 8, at ¶ 11, at 1362; *Mercury Inv. Co. v. F.W. Woolworth Co., supra* note 51, at ¶ 11, at 530.

Arrow Marina. An issue settled by the trial court and not urged as error on appeal becomes the settled law of the case and cannot be re-pressed on remand.[60]

¶ 43 Because Bank did not include in its appeal the trial court's dismissal of Red Arrow Marina on any ground or claim, we do not disturb that portion of the COCA opinion dealing with the correctness of the trial court's summary judgment in favor of Red Arrow Marina. We do not comment on the legal correctness of the trial court's ruling because the issue was not pressed by appeal. We note only that plaintiff's decision not to contest the dismissal of Red Arrow Marina has achieved what the anti-deficiency statute will not: the release of the mortgage debtor from potential liability on a fraud claim.

¶ 44 In his petition for certiorari Johnson presses for review only the portion of COCA's decision dealing with his guaranty liability. It is beyond this court's power to grant corrective relief from issues resolved by COCA but not explicitly pressed for certiorari review.[61] COCA's **determination that Bank's fraud claim may proceed against Johnson is now the settled law of the case.[62] It is left undisturbed by this opinion.**

### VII.

### SUMMARY

¶ 45 Plaintiff, alleging fraud in the inducement of its loan, seeks a remedy that cannot be withheld by invocation of a statute wholly irrelevant to the satisfaction of the harm alleged. The anti-deficiency statute cannot be interposed as a defense against a claim of fraud because the statute properly serves but a single purpose: the protection of mortgage debtors from the untimely imposition of deficiency liability. The resolution of a fraud claim lies beyond its reach.

¶ 46 The distinct obligation of a guaranty also falls outside the anti-deficiency statute's purview. The precise terms of the guaranty contract and the law governing that obligation—not the anti-deficiency statute—will determine the breadth of the guarantor's promise. The anti-deficiency statute's extinguishment of the mortgage debt (by lapse of time) does not confer on the guarantor any defenses beyond those the guaranty's unambiguous terms will allow.

¶ 47 Because the anti-deficiency statute completely extinguishes one type of obligation—the mortgage debt—defendants in a suit brought by a lender may be tempted to claim that the statute's operation erases other liabilities as well. But the statute cannot be stretched to accommodate claims or defenses it in no way addresses. In short, defendants cannot escape liability by invoking a defense to whose benefit they are not entitled. Upon satisfaction of the mortgage debt the anti-deficiency statute had fully achieved its purpose. We now hold that it may serve no other.

¶ 48 On certiorari granted upon defendants' petitions, the Court of Civil Appeals' opinion is vacated; the trial court's summary judgment is affirmed in part and reversed in part; and the cause is remanded for further proceedings to be consistent with today's pronouncement.

¶ 49 EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, OPALA, WINCHESTER and REIF, JJ., concur.

¶ 50 WATT, KAUGER and COLBERT, JJ., concur in part and dissent in part.

60. *Smedsrud v. Powell*, 2002 OK 87, ¶ 13, 61 P.3d 891, 896.

61. *Nealis v. Baird, supra* note 26, at ¶ 61, at 462; *Nichols v. Mid–Continent Pipe Line Co.*, 1996 OK 118, ¶ 23, 933 P.2d 272, 281; *Hough v. Leonard*, 1993 OK 112, ¶ 15, 867 P.2d 438, 445; *Barnett v. Barnett*, 1996 OK 60, ¶ 13, 917 P.2d 473, 477.

62. The settled-law-of-the-case doctrine bars relitigation of issues that are finally settled by an appellate opinion or those that the aggrieved party has failed timely to raise in the course of appellate contest. *Walters v. J.C. Penney Co.*, 2003 OK 100, ¶ 6, 82 P.3d 578, 582; *Nichols v. Mid–Continent Pipe Line Co., supra* note 61, at ¶ 24, at 281. The doctrine derives from a principle of judicial economy that seeks to avoid the "rehashing" of issues in successive appeals. *Patel v. OMH Med. Cent., Inc.*, 1999 OK 33, ¶ 22, 987 P.2d 1185, 1195.