2014 OK CIV APP 39

**BLUE SKY TELLURIDE, L.L.C., Plaintiff/Counter–Claim Defendant/Appellee,**

v.

**INTERCONTINENTAL JET SERVICE CORPORATION, Defendant/Counter–Claimant/Third–Party Plaintiff/Appellant,**

v.

**Harley Davidson Credit Corp., Third–Party Defendant/Appellee.**

**No. 110652.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Jan. 21, 2014.

---

Gary L. Richardson, Jason C. Messenger, Tulsa, Oklahoma, for Plaintiff/Counter–Claim Defendant/Appellee.

J. Schaad Titus, Shannon P. Wheeler, Tulsa, Oklahoma, for Defendant/Appellant.

Adam J. Strange, James E. Weger, Tulsa, Oklahoma, for Third–Party Defendant/Appellee.

BAY MITCHELL, Judge.

¶ 1 Defendant/Appellant Intercontinental Jet Service Corp. ("IJS") seeks review of an order granting summary judgment in favor of Third–Party Defendant/Appellee Harley Davidson Credit Corp. ("Harley Davidson"). IJS also appeals the trial court's order denying its motion for new trial/reconsideration.

¶ 2 Plaintiff/Appellee Blue Sky Telluride, L.L.C. ("Blue Sky") brought a replevin action alleging IJS wrongfully retained possession of a Mitsubishi MU–2 aircraft ("aircraft") owned by Blue Sky and deliveredto IJS for the limited purpose of inspection.[1] Blue Sky asserted IJS exceeded the scope of the inspection and performed unauthorized repairs on the aircraft. IJS filed its answer and counterclaim admitting it retained possession of the aircraft but that it did so to ensure payment by Blue Sky for the repairs it performed with Blue Sky's consent. All parties agree the aircraft was delivered to IJS on or around December 5, 2008. In its counterclaim, IJS claimed it holds a "mechanic's lien" filed with the Federal Aviation Administration ("FAA") and sought to foreclose the lien and sell the aircraft. IJS also included a third-party claim against Harley Davidson Credit Corp. alleging its lien was superior to any right, title, or interest held by Harley Davidson.

¶ 3 Harley Davidson is the successor in interest to Eaglemark Savings Bank, which originally financed the purchase of the subject aircraft. Eaglemark, now Harley Davidson, filed its purchase money security interest in the aircraft with the FAA on June 21, 2006, and the document was recorded on July 27, 2006. IJS filed its lien with the FAA covering the value of the services and repairs rendered on March 23, 2009, and the document was recorded on April 6, 2009.

¶ 4 Blue Sky filed a motion for partial summary judgment against the counterclaim of IJS, arguing the statute of limitations period had expired for IJS to foreclose its lien pursuant to 42 O.S. §§ 95 and 100. Harley Davidson also filed a summary judgment motion arguing IJS did not hold a common law possessory lien as it claimed, and, even if it did, such lien was governed by 42 O.S. § 91 and subject to Harley Davidson's senior lien. Harley Davidson also argued that pursuant to 42 O.S. §§ 95 and 100 the statute of limitations had run barring IJS from enforcing its lien. In separately filed responses, IJS asserted it retained possession of the aircraft and held a common law possessory lien, the foreclosure of which was not time-barred because the statute of limitations on the underlying debt had not yet lapsed.

¶ 5 On March 6, 2012, the trial court granted summary judgment in favor of Harley Davidson. The journal entry referenced a previously entered and signed minute order,[2]

---

1. Blue Sky's amended petition also included claims for conversion, fraud, and slander of title.

2. The minute order granting summary judgment in favor of Harley Davidson was entered on February 9, 2012. IJS filed its motion for new trial/reconsideration on February 17, 2012. IJS attached the journal entry entered March 6, 2012 to its petition in error as the underlying judgment of which it seeks review. Because this March 6th order specifically referenced the findings and conclusions contained in the minute order, we looked to the minute order for the trial court's reasoning behind its ruling in favor of Harley Davidson. IJS also attached the trial court's order entered April 11, 2012 denying its

which included findings and conclusions of law stating, prior to 2009, liens on aircraft were covered by 42 O.S. § 91. Statutory changes in the definition of personal property moved airplanes to 42 O.S. § 91A and subsection (B)(3) required such liens to be foreclosed within sixty (60) days of filing. According to the undisputed facts of the parties, IJS filed its lien with the FAA on March 23, 2009 but did not seek to foreclose its lien until the filing of its answer and counterclaim to Blue Sky's original petition on May 6, 2010. The trial court held that "continued and uninterrupted possession [did] not 'secure' a lien past the SOL."

¶ 6 IJS filed a motion for new trial/reconsideration on February 17, 2012 arguing 42 O.S.2011 § 91A(B)(3) did not apply to the facts in this case and that the statute of limitations on its common law possessory lien had not yet expired. IJS also argued its common law possessory lien was superior to Harley Davidson's purchase money security interest. IJS further asserted summary judgment was not appropriate because Harley Davidson would be unjustly enriched by IJS's repairs and any statute of limitations was "equitably tolled" due to settlement negotiations. The trial court denied IJS's motion to reconsider from which this appeal was taken. Consistent with 12 O.S.2011 § 951(b), IJS's amended petition in error presented the same issues as its motion for new trial.

¶ 7 During the course of litigation and with the trial court's approval, Blue Sky sold the aircraft to an unrelated party in an arms length transaction for $525,000. IJS and Harley Davidson agreed to release their liens on the aircraft and attached them to the sale proceeds. $125,000 of the sale proceeds was disbursed to Harley Davidson, and the remaining $400,000 remains in escrow. Blue Sky did not assert any claims against Harley Davidson. Blue Sky's claims against IJS remain outstanding. This appeal is properly

before this Court as the trial court invoked 12 O.S.2011 § 994(A) by declaring its grant of summary judgment in favor of Harley Davidson was intended to be a final order terminating all claims between IJS and Harley Davidson and there was no just reason for delay of any appeal.

## STANDARD OF REVIEW

██ ¶ 8 An appeal from the denial of a motion for a new trial is reviewed under the abuse of discretion standard.[3] *Head v. McCracken,* 2004 OK 84, ¶ 2, 102 P.3d 670, 674. However, because the correctness of the trial court's denial of a new trial depends on the propriety of the underlying grant of summary judgment, we must determine whether that decision was proper. *Id.*

¶ 9 Whether the trial court's entry of summary judgment was proper is a question of law we review *de novo. Manley v. Brown,* 1999 OK 79, ¶ 22, 989 P.2d 448, 455. In a *de novo* review, we have plenary, independent, and non-deferential authority to determine whether the trial court erred in its application of the law and whether a dispute exists as to any genuine issue of material fact. *Kluver v. Weatherford Hosp. Auth.,* 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. Like the trial court, we examine the pleadings and summary judgment evidentiary materials submitted by the parties to determine if a genuine issue of material fact is in dispute. *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. In so doing, we view the facts and all reasonable inferences arising therefrom in the light most favorable to the nonmovant. *Id.*

## ANALYSIS

### AIRCRAFT LIENS

 ¶ 10 Security interests in most goods are governed entirely by state law.

---

motion for new trial/reconsideration to its amended petition in error. Although IJS arguably filed its motion for new trial/reconsideration on February 17, 2012 *before* the trial court actually granted summary judgment in favor of Harley Davidson on March 6, 2012, there is no question that this matter is properly before this Court on appeal.

**3.** As noted by Harley Davidson, although summary proceedings are inconsistent with the request for a "trial," the request for a new trial upon reconsideration of the prior summary proceeding is allowable under the statutory scheme. *Bank of Okla. N.A. v. Red Arrow Marina Sales & Serv.,* 2009 OK 77, 224 P.3d 685.

However, given the interstate nature of aircraft, Congress passed the Federal Aviation Act ("Act") of 1958, which directed the Secretary of Transportation to establish and maintain a system for recording "[a]ny conveyance which affects the title to, or any interest in, any civil aircraft of the United States." 49 U.S.C.A. § 44107(a) (previously 49 U.S.C.A.App. § 1403). The purpose behind the Act was to create "a central clearing house for recordation of titles so that a person, wherever he may be, will know where he can find ready access to the claims against, or liens, or other legal interests in an aircraft." *Philko Aviation, Inc. v. Shacket,* 462 U.S. 406, 411, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983) (internal citations omitted). The Act requires recording with the FAA of every transfer of any interest in a civil aircraft in this country. *Id.,* 462 U.S. at 410, 103 S.Ct. 2476; *e.g. Bank of Okla. v. Martin,* 1987 OK CIV APP 42, ¶ 12, 744 P.2d 218, 220. "Although state law determines priorities, all interests must be federally recorded before they can obtain whatever priority to which they are entitled under state law." *Philko Aviation,* 462 U.S. at 413, 103 S.Ct. 2476. *See also Martin* at ¶ 12, 744 P.2d at 220 (holding that a security interest was not perfected until filed with the FAA and priority of competing security interests in the same collateral was determined by reference to Oklahoma's UCC statutes). Failure to record with the FAA "invalidates the conveyance as to innocent third persons ... [b]ut recordation itself merely validates; it does not grant priority." *Philko Aviation,* 462 U.S. at 413, 103 S.Ct. 2476.

¶ 11 In a case predating *Philko* but consistent with its reasoning, the Oklahoma Supreme Court also held the Act supplanted inconsistent state recording statutes, i.e. 42 O.S. § 98, requiring a lienholder to file a statement with the county clerk within sixty (60) days after last performing service on the subject personal property to perfect its claim of lien. *McCormack v. Air Center, Inc.,* 1977 OK 192, ¶ 16, 571 P.2d 835, 838. After filing with the FAA, no further recordation is required for a lienholder to perfect its claim of lien on an aircraft. 49 U.S.C.A. § 44108(b); *McCormack,* ¶ 16, 571 P.2d at 838 ("The Trial Court erred in holding [lien claimant] was required to file at the office of the county clerk ... within the statutory period in order to perfect its claim of lien."). The lien is valid from the date of filing. 49 U.S.C.A. § 44108(b).

¶ 12 Here, both parties recorded their respective interests with the FAA. Harley Davidson filed its purchase money security interest on June 21, 2006, and IJS filed its lien with the FAA on March 23, 2009. Both liens being perfected by filing with the FAA, we must look to Oklahoma law to determine the priority of IJS's lien relative to Harley Davidson's purchase money security interest and whether the statute of limitations had lapsed on such lien by the time IJS sought to foreclose it.

## POSSESSORY LIENS

■ ¶ 13 IJS, citing *Williamson v. Winningham,* 1947 OK 231, 199 Okla. 393, 186 P.2d 644, maintains it has a common law possessory lien and not a statutory lien under either 42 O.S. § 91 or 42 O.S. § 91A.[4] All of the parties to this appeal cite *Williamson* to support their respective positions. This case from 1947 discusses the common law and Oklahoma's statutory lien scheme as it existed at the time. Basically, 42 O.S. § 91 "reiterates" an artisan's right to a possessory lien arising under common law. *Williamson* at ¶ 25, 186 P.2d at 650. With such common law liens, "[i]t is the right of a person to retain that which is in his possession, belonging to another, until certain demands against such other person are satisfied." *Id.* at ¶ 23, 186 P.2d at 650. "An artisan's lien for materials and labor expended in betterment of personal property, existing under the common law, where in the eyes of the law, ... the artisan has right of possession, may constitute a lien, *limited by statute.*" *Id.* at ¶ 28, 186 P.2d at 650 (emphasis added).

¶ 14 *Williamson* recognized statutory enactments may abrogate the common law.

---

4. IJS argues, in the alternative, that if one of these statutes governs its lien, it is § 91A and not § 91.

This concept is also codified in our statutes. Section 2 of Title 12 provides in relevant part:

> The common law, *as modified by constitutional and statutory law,* judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma.... 12 O.S.2011 § 2.

(Emphasis added.) At the time *Williamson* was decided, § 91A had not been enacted and § 91 merely restated the right existing under the common law. Section 91 applied to possessory liens for all types of personal property but did not contain any of the current notice requirements or foreclosure sale procedures. *Compare* R.L.1910 § 3852 and 42 O.S.2011 § 91.

¶ 15 As originally enacted and as it read at the time of the *Williamson* decision, the text of R.L.1910 § 3852 read as follows:

> **Lien for services rendered on article.** Every person who, while lawfully in possession of an article of personal property, renders any service to the owner thereof by labor or skill employed for the protection, improvement, safe-keeping or carriage thereof, has a special lien thereon, dependent on possession, for the compensation, if any, which is due to him from the owner for such service.

This statute was first enacted in 1910 and remained substantially the same until a major overhaul in 2005.[5] 2005 Okla. Sess. Laws, ch. 213, § 4, ch. 477, § 1 (codified at 42 O.S. Rev. Supp.2005, § 91) (effective Nov. 1, 2005). Prior to 2005, § 91 covered possessory liens for all types of personal property. The 2005 changes to Title 42 split off vehicles titled by the Oklahoma Tax Commission ("OTC") or a federally recognized Indian tribe in the State of Oklahoma. 2005 Okla.

Sess. Laws, ch. 213, § 4, ch. 477, § 1 (codified at 42 O.S. Rev. Supp.2005, § 91) (effective Nov. 1, 2005). Those certificate of title vehicles were covered under § 91 while all other types of personal property, except for farm equipment as defined in § 91.2, were covered under § 91A. *Id.* at ch. 213, §§ 1–2, ch. 477, §§ 1–2 (codified at 42 O.S. Rev. Supp.2005, §§ 91, 91A, and 91.2) (effective Nov. 1, 2005). The 2005 changes also included procedures for foreclosing § 91A property. *Id.* at ch. 477, § 2 (codified at 42 O.S. Rev. Supp.2005, § 91A) (effective Nov. 1, 2005). Additional changes in 2006 rectified some internal inconsistencies in Title 42 and further refined foreclosure procedures for § 91A personal property. 2006 Okla. Sess. Laws, ch. 247, § 2 (codified at 42 O.S. Supp. 2006, § 91A) (effective Nov. 1, 2006).

■ ¶ 16 Since *Williamson* was decided, the statutes covering possessory liens on personal property have changed significantly.[6] Currently, § 91A covers possessory liens for all types of personal property which do not have a certificate of title issued by the OTC or a federally recognized Indian tribe in the State of Oklahoma.[7] 42 O.S.2011 § 91A(A)(1)(a)-(b). It is a catch-all provision intended to govern possessory liens on items of personal property which do not fall under either §§ 91 or 91.2. As "vehicle[s]" which "ha[ve] a certificate of title that is not issued by the Oklahoma Tax Commission or by a federally recognized Indian tribe in the State of Oklahoma," titled aircraft fall under the purview of § 91A. Thus, any lienholder, like IJS, who claims a possessory lien on aircraft for "furnishing storage, rental space, material, labor or skill for the protection, improvement, safekeeping, towing, right to occupy space, storage or carriage thereof" does so pursuant to 42 O.S.2011 § 91A.[8] Common law

---

**5.** For a discussion of the 2005 and 2006 changes to 42 O.S. §§ 91 *et seq.,* see Charles Cheatham, *Oklahoma Legislation: Financial Exploitation; Security Freezes; and Liens on Certificate of Title Goods,* 61 Consumer Fin. L.Q. Rep. 426, 438–44 (2007).

**6.** In addition to the changes to 42 O.S. § 91 et seq., substantial changes were made to the laws governing liens on items of personal property stored in self storage facilities, The Self–Storage Facility Lien Act, 42 O.S. §§ 191–200, and to the

laws governing liens on manufactured homes, 42 O.S. § 180.

**7.** The Self–Storage Facility Lien Act makes clear that should both that Act and § 91A apply to the personal property at issue, the provisions of The Self–Storage Facility Lien Act, 42 O.S. § 191 *et seq.* will apply. Because this matter does not involve a self-storage facility, the provisions of § 91A apply.

**8.** We reject any argument that IJS had a laborer's lien as provided in 42 O.S.2011 §§ 92 or 97.

possessory liens on aircraft have been subsumed into § 91A along with the additional requirement that such liens be filed with the FAA rather than with the county clerk. 49 U.S.C.A. § 44108(b); *McCormack*, ¶ 16, 571 P.2d at 838.

¶ 17 Presently, for items of personal property covered by § 91A, there is no deadline for providing notice to the owner or secured creditor (if any) of the existence of the possessory lien, 42 O.S.2011 § 91A,[9] except for the requirement that a lien statement be filed with the county clerk within sixty (60) days of the work being performed pursuant to 42 O.S.2011 § 98.[10] Notice need only be given when the lienholder wishes to foreclose its lien by a sale as provided in subsection (A)(3). Section 91A(A)(3) sets forth procedures for a non-judicial foreclosure sale of the subject personal property.

¶ 18 Here, IJS maintained possession of the subject aircraft from the time it accepted delivery from Blue Sky[11] but did not seek to foreclose its lien by the procedures set forth in § 91A(A)(3). Rather, Blue Sky brought a replevin action against IJS for the recovery of the aircraft. In its answer and counterclaim, IJS asserted it was entitled to payment from Blue Sky for the cost of labor and parts used in the repair of the aircraft, plus storage fees, interest, and attorneys fees and sought the permission of the trial court to "foreclose its lien and sell the aircraft as allowed by Oklahoma law."[12] Before any sale with the attendant notice requirements could be held, the trial court granted summary judgment in favor of Harley Davidson finding the statute of limitations had lapsed for IJS to foreclose its lien. Thus, we must examine whether IJS was within the statutory time to foreclose its perfected § 91A possessory lien on the subject aircraft.

## LIMITATION PERIOD FOR ENFORCING § 91A LIENS

¶ 19 We disagree with the trial court's determination that IJS must have enforced its lien within sixty days of filing with the FAA under 42 O.S.2011 § 91A(B)(3). Instead, we find that provision applies only when the lienholder has lost possession as described in subsections (B)(1) and (B)(2). Here, IJS maintained possession of the aircraft until the court approved sale. Its lien retained the same characteristics when attached to the sale proceeds. The only other time limitations provided in § 91A concern the notice of the sale, 42 O.S. § 91A(A)(4)[13] and mandate that foreclosure proceedings "shall not be commenced until thirty (30) days after said lien has accrued," 42 O.S. § 91A(A)(6). By the very terms of § 91A, the lien continues so long as the lienholder retains possession. Section 91A(A)(2) provides in pertinent part:

It is an axiomatic rule of statutory construction that whenever a general statute and a specific statute conflict, the terms of the specific statute control. *Duncan v. City of Nichols Hills*, 1996 OK 16, ¶ 27, 913 P.2d 1303, 1310. There is a specific mandate that possessory liens on vehicles which have a certificate of title that is not issued by the OTC or a federally recognized Indian tribe in the State of Oklahoma fall under the purview of § 91A. Additionally, unlike the § 91A lien claimed by IJS, liens claimed pursuant to §§ 92 or 97 are not dependent on the lienholder's continued possession of the subject personal property.

9. 42 O.S. § 91A was last amended in 2008. 2008 Okla. Sess. Laws, ch. 98, § 2 (codified at 42 O.S. Supp.2009 § 91A (effective July 1, 2008)). The text of the statute remained the same from the time the repairs were made to the aircraft to the present day. For ease of reference, citation will be made to the 2011 Oklahoma Statutes when referring to § 91A as it applies to this case.

10. As discussed in paragraphs 10–12, *supra*, filing a lien statement with the county clerk is not required to perfect a possessory lien on aircraft.

11. IJS maintained actual possession of the subject aircraft until the time of the court approved sale. Both IJS and Harley Davidson released their liens on the aircraft and attached them to the proceeds of the sale. By order of the trial court, the liens retained the same characteristics when attached to the sale proceeds as they would have had if still attached to the aircraft.

12. We note that court permission is not required under § 91A to foreclose a lien by sale. However, in this case, the parties were already engaged in litigation when IJS sought to foreclose its lien.

13. 42 O.S. § 91A(A)(4) provides that the sale notice shall be posted "at least ten (10) days before the time ... specified for the sale." Here, no such notice was yet posted.

Any person who, *while lawfully in possession* of an article of personal property to which this section applies, renders any service to the owner thereof by furnishing storage, rental space, material, labor or skill for the protection, improvement, safekeeping, towing, right to occupy space, storage or carriage thereof, *has a special lien thereon, dependent on possession,* for compensation, if any, which is due to such person from owner for such service.

(Emphasis added.) Thus, we must look to other portions of Title 42 for the statute of limitation for § 91A liens.

■ ¶ 20 Both Harley Davidson and Blue Sky argue 42 O.S.2011 §§ 95 and 100 apply. Section 95 provides "proceedings under this act shall be commenced within eight (8) months after the work is done." We note that the statute itself has a footnote after the word "act" which notes "act" refers to Title 42, § 92 *et seq.* By the terms of § 95, its limitation period only applies to the lien described in § 92. This is further supported by the legislative history of § 92 *et seq.* Sections 92–96 of Title 42 were all part of House Bill No. 117 [14] passed by the Second Legislature on March 20, 1911. 1910–11 Okla. Sess. Laws, ch. 114, p. 254, §§ 1–5 (now codified at 42 O.S.2011 §§ 92–96). Thus, the eight (8) month limitation contained in § 95 applies to § 92–96 and not § 91A.

¶ 21 Section 100 provides as follows:

Said lien may be foreclosed by the sale of the property so covered any time within twelve (12) months in the same manner provided by law for the foreclosure of chattel mortgages. 42 O.S.2011 § 100.

"Said lien" to which § 100 refers is the lien provided for in § 97. Like §§ 92–96, §§ 97–102 were passed as a part of the same bill; specifically, House Bill No. 654 [15] passed by the Sixth Legislature on March 27, 1917. 1917 Okla. Sess. Laws, ch. 187, p. 350, §§ 1–8 (now codified at 42 O.S.2011 § 97–102). Each section within the bill became a different section of Title 42.[16] Section 1 of House Bill No. 654, which describes the lien, became 42 O.S.2011 § 97, and § 4, which provides for the twelve month limitation on the foreclosure sale, became 42 O.S.2011 § 100.[17] Because the limitations period provided in § 95 or § 100 does not apply to the lien provided for in § 91A, we must look to other portions of Title 42 for the limitations period. The rest of the sections in Chapter 2 of Title 42, specifically §§ 111 through 121 and §§ 131 through 132, deal with specific subject matter. Sections 111 through 121 involve liens claimed by threshers and combiners, and §§ 131 through 132 deal with blacksmiths, wheelwrights, and horseshoers. None of these sections apply to § 91A possessory liens. We instead turn to Chapter 1 of Title 42–General Provisions.

■ ¶ 22 Chapter 1 of Title 42 provides that a lien is created "by contract of the parties; or by operation of law." 42 O.S. 2011 § 6. Here, IJS's possessory lien pursuant to 42 O.S.2011 § 91A arose by operation of law as the record does not show any agreement, express or implied, between the parties to create a lien on the aircraft. *See*

---

**14.** "An Act creating a lien for wages for laborers and employees, and providing the procedure to enforce same." 1910–11 Okla. Sess. Laws, ch. 114, p. 254, §§ 1–5.

**15.** "An Act providing for a lien on personal property for labor, money, material or supplies in the producing of, altering or repairing of said personal property, repealing § 3858, Revised Laws of Oklahoma, 1910, and providing a procedure for foreclosing lien, and declaring an emergency." 1917 Okla. Sess. Laws, ch. 187, p. 350, §§ 1–8.

**16.** We note that 42 O.S. § 98 was amended in 1992 to apply to all of Chapter 2 of Title 42, including § 91A. 1992 Okla. Sess. Laws, ch. 310, § 2 (codified at 42 O.S.Supp.1992, § 98) (effec-

tive Sept. 1, 1992). However, as discussed in paragraphs 9–11, *supra*, the only recordation requirements necessary for the perfection of a lien on aircraft is that such lien be filed with the FAA. The additional recordation requirements of § 98 are supplanted by federal law.

**17.** The Historical and Statutory Notes ("notes") of 42 O.S.2011 § 100 state § 100 was derived from § 3 of 1917 Okla. Sess. Laws, ch. 187, p. 351 (House Bill No. 654), while the notes to 42 O.S.2011 § 99 (Priority of mortgage liens) state § 99 was derived from § 4 of 1917 Okla. Sess. Laws, ch. 187, p. 351 (House Bill No. 654). We suspect that this is a scrivener's error as § 3 of the session laws is identical to 42 O.S.2011 § 99 and § 4 of the session laws is identical to 42 O.S.2011 § 100.

*Phoenix Mutual Life Ins. Co. v. Harden,* 1979 OK 93, ¶ 6, 596 P.2d 888, 890 ("Intention to create a lien on property must clearly appear from the language of some instrument and attendant circumstances."). Title 42 O.S.2011 § 7 further provides "[n]o lien arises by mere operation of law until the time at which the act to be secured thereby ought to be performed." Title 42 O.S.2011 § 23 provides in pertinent part "[a] lien is extinguished by the mere lapse of the time within which ... an action can be brought on the principal obligation." When read together with the continued possession requirements of § 91A and in the context of the present case, those statutes establish IJS's lien arose at the time Blue Sky was obligated to pay for the repairs. IJS can enforce such lien so long as it retains possession of the aircraft and the statute of limitations on the underlying debt has not lapsed.

¶ 23 IJS retained possession of the aircraft to secure payment for the repairs it performed with the alleged consent of Blue Sky. The parties agree the aircraft was delivered to IJS on or about December 5, 2008. IJS maintains it provided its final invoice to Blue Sky demanding payment on January 26, 2009, and the record shows IJS filed its lien with the FAA on March 23, 2009. Oklahoma law is clear that IJS's lien was not perfected until it filed the lien with the FAA, *see* paragraphs 9–11, *supra,* but that is not when IJS's right to payment arose. Rather, IJS's right to payment arose when it completed repairs as consented to by Blue Sky, which appears to be sometime in January 2009.[18] Even if IJS became entitled to payment as early as December 5, 2008 when the aircraft was first delivered to IJS, the statute of limitations had not run on Blue Sky's underlying obligation to pay for repairs rendered.

¶ 24 The principal obligation underlying IJS's claim of lien is the repair work IJS performed on the aircraft which was done,

according to IJS, either by verbal or written agreement. We agree with IJS that the statute of limitation for breach of an agreement is either three years or five years depending on whether the agreement is verbal or written. 12 O.S.2011 § 95(A)(1) and (2). Because IJS's lien potentially arose, at the earliest, when it accepted delivery on December 5, 2008, its lien lapsed, at the earliest, within three years of that date, or December 5, 2011. All parties agree IJS first sought to foreclose its lien by the filing of its counterclaim on May 10, 2010, well within the earliest possible limitation period.

## PRIORITY OF IJS's § 91A LIEN

¶ 25 Unlike § 91, § 91A does not discuss the priority of such possessory liens.[19] Additionally, for the same reasons as discussed in paragraphs 20 and 21, *supra,* neither §§ 96 nor 99 discussing the priority of each subject lien, apply to § 91A. Rather, the Uniform Commercial Code ("UCC"), 12A O.S.2011 § 1–101 *et seq.* provides for priority of such possessory liens. Specifically, 12A O.S.2011 § 1–9–333 provides "[a] possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise." Here, the statute creating the lien, 42 O.S.2011 § 91A, does not provide otherwise. Thus, UCC § 1–9–333 governs, and IJS's § 91A possessory lien, if valid, is superior to Harley Davidson's security interest and the trial court's grant of summary judgment must be reversed.

## VALIDITY OF IJS's CLAIM OF LIEN

¶ 26 Because the claims between Blue Sky and IJS remain outstanding, we cannot determine whether IJS had a valid lien such that the claims between IJS and Harley Davidson can be resolved. Pursuant to the terms of 42 O.S.2011 § 23, "[n]o lien

18. Portions of the deposition transcript of Dennis Braner attached to IJS's response to Blue Sky's motion for summary judgment indicate IJS requested a deposit of $130,000 in December 2008 to start repairs on the aircraft. According to Mr. Braner, IJS agreed to proceed with repairs without the deposit, and Blue Sky agreed to pay the deposit by January 7, 2009. No deposit was ever received by IJS. Mr. Braner stated the work on

the aircraft was completed January 20, 2009 and the final invoice was completed January 26, 2009.

19. Title 42 O.S.2011 § 91 subordinates the possessory lien provided for in that statute to perfected security interests unless certain notice and consent requirements are met.

arises by mere operation of law until the time at which the act to be secured thereby ought to be performed." Additionally, § 91A provides such possessory liens arise "for the compensation, *if any,* which is due to such person *from the owner* for such service." 42 O.S.2011 § 91A(2) (emphasis added). Here, not only is there a question about *when* the obligation to pay arose (when IJS accepted delivery, when the work on the aircraft was completed, or when the final invoice was delivered to Blue Sky), but there also remains a question of fact as to whether Blue Sky was ever obligated to pay IJS for the repairs. Blue Sky maintains it delivered the aircraft to IJS for the limited purpose of inspection while IJS maintains it was authorized to make repairs as consented to by Blue Sky and as mandated by FAA maintenance requirements. If Blue Sky did not give permission to IJS for the repairs, no obligation to pay ever arose, and thus no lien exists which can be prior to Harley Davidson's security interest. On the other hand, if Blue Sky consented to the repairs performed by IJS, Blue Sky became obligated to pay for such repairs. Thus IJS's lien would be valid and superior to Harley Davidson's lien and IJS was within the statutory time for foreclosing such lien. Additionally, we note there appears to be some question as to whether the repair work undertaken by IJS was rendered to the owner of the aircraft. The deposition of Dennis Braner indicated uncertainty may exist as to whether IJS performed the repairs for the owner of the aircraft or for someone else who may or may not have been an authorized agent.

¶ 27 Because there remains a question of fact as to whether Blue Sky consented to the repairs performed by IJS creating an obligation to pay giving rise to IJS's lien, the decision of the trial court is REVERSED and REMANDED for further proceedings consistent with this opinion.

BELL, P.J., and GOREE, J., concur.