OSCN Found Document:BLUE SKY TELLURIDE, L.L.C. v. INTERCONTINENTAL JET SERVICE CORP.

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 BLUE SKY TELLURIDE, L.L.C. v. INTERCONTINENTAL JET SERVICE CORP.
2014 OK CIV APP 39
Case Number: 110652
Decided: 01/21/2014
Mandate Issued: 04/29/2014
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2014 OK CIV APP 39, __ P.3d __

BLUE SKY TELLURIDE, L.L.C., Plaintiff/Counter-Claim 
Defendant/Appellee,
v.
INTERCONTINENTAL JET SERVICE CORPORATION, 
Defendant/Counter-Claimant/Third-Party Plaintiff/Appellant,
v.
HARLEY 
DAVIDSON CREDIT CORP., Third-Party Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY, OKLAHOMA
HONORABLE DANA LYNN KUEHN, JUDGE

REVERSED AND REMANDED

Gary L. Richardson, Jason C. Messenger, Tulsa, Oklahoma, for 
Plaintiff/Counter-Claim Defendant/Appellee,
J. Schaad Titus, Shannon P. 
Wheeler, Tulsa, Oklahoma, for Defendant/Appellant,
Adam J. Strange, James E. 
Weger, Tulsa, Oklahoma, for Third-Party Defendant/Appellee.


Bay Mitchell, Judge:
¶1 Defendant/Appellant Intercontinental Jet Service Corp. ("IJS") seeks 
review of an order granting summary judgment in favor of Third-Party 
Defendant/Appellee Harley Davidson Credit Corp. ("Harley Davidson"). IJS also 
appeals the trial court's order denying its motion for new 
trial/reconsideration.
¶2 Plaintiff/Appellee Blue Sky Telluride, L.L.C. ("Blue Sky") brought a 
replevin action alleging IJS wrongfully retained possession of a Mitsubishi MU-2 
aircraft ("aircraft") owned by Blue Sky and delivered to IJS for the 
limited purpose of inspection.[1] Blue Sky asserted IJS exceeded the scope of the 
inspection and performed unauthorized repairs on the aircraft. IJS filed its 
answer and counterclaim admitting it retained possession of the aircraft but 
that it did so to ensure payment by Blue Sky for the repairs it performed with 
Blue Sky's consent. All parties agree the aircraft was delivered to IJS on or 
around December 5, 2008. In its counterclaim, IJS claimed it holds a "mechanic's 
lien" filed with the Federal Aviation Administration ("FAA") and sought to 
foreclose the lien and sell the aircraft. IJS also included a third-party claim 
against Harley Davidson Credit Corp. alleging its lien was superior to any 
right, title, or interest held by Harley Davidson.
¶3 Harley Davidson is the successor in interest to Eaglemark Savings Bank, 
which originally financed the purchase of the subject aircraft. Eaglemark, now 
Harley Davidson, filed its purchase money security interest in the aircraft with 
the FAA on June 21, 2006, and the document was recorded on July 27, 2006. IJS 
filed its lien with the FAA covering the value of the services and repairs 
rendered on March 23, 2009, and the document was recorded on April 6, 2009.
¶4 Blue Sky filed a motion for partial summary judgment against the 
counterclaim of IJS, arguing the statute of limitations period had expired for 
IJS to foreclose its lien pursuant to 42 O.S. §§95 and 100. Harley 
Davidson also filed a summary judgment motion arguing IJS did not hold a common 
law possessory lien as it claimed, and, even if it did, such lien was governed 
by 42 O.S. §91 and subject to 
Harley Davidson's senior lien. Harley Davidson also argued that pursuant to 42 O.S. §§95 and 100 the statute of 
limitations had run barring IJS from enforcing its lien. In separately filed 
responses, IJS asserted it retained possession of the aircraft and held a common 
law possessory lien, the foreclosure of which was not time-barred because the 
statute of limitations on the underlying debt had not yet lapsed.
¶5 On March 6, 2012, the trial court granted summary judgment in favor of 
Harley Davidson. The journal entry referenced a previously entered and signed 
minute order,[2] 
which included findings and conclusions of law stating, prior to 2009, liens on 
aircraft were covered by 42 O.S. 
§91. Statutory changes in the definition of personal property moved 
airplanes to 42 O.S. §91A and 
subsection (B)(3) required such liens to be foreclosed within sixty (60) days of 
filing. According to the undisputed facts of the parties, IJS filed its lien 
with the FAA on March 23, 2009 but did not seek to foreclose its lien until the 
filing of its answer and counterclaim to Blue Sky's original petition on May 6, 
2010. The trial court held that "continued and uninterrupted possession [did] 
not 'secure' a lien past the SOL."
¶6 IJS filed a motion for new trial/reconsideration on February 17, 2012 
arguing 42 O.S. 2011 §91A(B)(3) 
did not apply to the facts in this case and that the statute of limitations on 
its common law possessory lien had not yet expired. IJS also argued its common 
law possessory lien was superior to Harley Davidson's purchase money security 
interest. IJS further asserted summary judgment was not appropriate because 
Harley Davidson would be unjustly enriched by IJS's repairs and any statute of 
limitations was "equitably tolled" due to settlement negotiations. The trial 
court denied IJS's motion to reconsider from which this appeal was taken. 
Consistent with 12 O.S. 2011 
§951(b), IJS's amended petition in error presented the same issues as its 
motion for new trial.
¶7 During the course of litigation and with the trial court's approval, Blue 
Sky sold the aircraft to an unrelated party in an arms length transaction for 
$525,000. IJS and Harley Davidson agreed to release their liens on the aircraft 
and attached them to the sale proceeds. $125,000 of the sale proceeds was 
disbursed to Harley Davidson, and the remaining $400,000 remains in escrow. Blue 
Sky did not assert any claims against Harley Davidson. Blue Sky's claims against 
IJS remain outstanding. This appeal is properly before this Court as the trial 
court invoked 12 O.S. 2011 
§994(A) by declaring its grant of summary judgment in favor of Harley 
Davidson was intended to be a final order terminating all claims between IJS and 
Harley Davidson and there was no just reason for delay of any appeal.
STANDARD OF REVIEW
¶8 An appeal from the denial of a motion for a new trial is reviewed under 
the abuse of discretion standard.[3] Head v. McCracken, 2004 OK 84, ¶2, 102 P.3d 670, 674. However, because 
the correctness of the trial court's denial of a new trial depends on the 
propriety of the underlying grant of summary judgment, we must determine whether 
that decision was proper. Id.
¶9 Whether the trial court's entry of summary judgment was proper is a 
question of law we review de novo. Manley v. Brown, 1999 OK 79, ¶22, 989 P.2d 448, 455. In a de 
novo review, we have plenary, independent, and non-deferential authority to 
determine whether the trial court erred in its application of the law and 
whether a dispute exists as to any genuine issue of material fact. Kluver v. 
Weatherford Hosp. Auth., 1993 OK 
85, ¶14, 859 P.2d 1081, 1084. 
Like the trial court, we examine the pleadings and summary judgment evidentiary 
materials submitted by the parties to determine if a genuine issue of material 
fact is in dispute. Carmichael v. Beller, 1996 OK 48, ¶2, 914 P.2d 1051, 1053. In so doing, we 
view the facts and all reasonable inferences arising therefrom in the light most 
favorable to the nonmovant. Id.
ANALYSIS
AIRCRAFT LIENS
¶10 Security interests in most goods are governed entirely by state law. 
However, given the interstate nature of aircraft, Congress passed the Federal 
Aviation Act ("Act") of 1958, which directed the Secretary of Transportation to 
establish and maintain a system for recording "[a]ny conveyance which affects 
the title to, or any interest in, any civil aircraft of the United States." 49 
U.S.C.A §44107(a) (previously 49 U.S.C.A. §1403). The purpose behind the Act was 
to create "a central clearing house for recordation of titles so that a person, 
wherever he may be, will know where he can find ready access to the claims 
against, or liens, or other legal interests in an aircraft." Philko Aviation, 
Inc. v. Shackett, 462 U.S. 406, 411 (1983) (internal citations omitted). The 
Act requires recording with the FAA of every transfer of any interest in a civil 
aircraft in this country. Id., 462 U.S. at 410; e.g. Bank of Okla. 
N.A. v. Martin, 1987 OK CIV APP 
42, ¶12, 744 P.2d 218, 220. 
"Although state law determines priorities, all interests must be federally 
recorded before they can obtain whatever priority to which they are entitled 
under state law." Philko Aviation, 462 U.S. at 413. See also 
Martin at ¶12, 744 P.2d at 220 (holding that a security interest was not 
perfected until filed with the FAA and priority of competing security interests 
in the same collateral was determined by reference to Oklahoma's UCC statutes). 
Failure to record with the FAA "invalidates the conveyance as to innocent third 
persons... [b]ut recordation itself merely validates; it does not grant 
priority." Philko Aviation, 462 U.S. at 413.
¶11 In a case predating Philko but consistent with its reasoning, the 
Oklahoma Supreme Court also held the Act supplanted inconsistent state recording 
statutes, i.e. 42 O.S. 
§98, requiring a lienholder to file a statement with the county clerk within 
sixty (60) days after last performing service on the subject personal property 
to perfect its claim of lien. McCormack v. Air Center, Inc., 1977 OK 192, ¶16, 571 P.2d 835, 838. After filing with 
the FAA, no further recordation is required for a lienholder to perfect its 
claim of lien on an aircraft. 49 U.S.C.A. §44108(b); McCormack, ¶16, 571 
P.2d at 838 ("The Trial Court erred in holding [lien claimant] was required to 
file at the office of the county clerk. . . within the statutory period in order 
to perfect its claim of lien."). The lien is valid from the date of filing. 49 
U.S.C.A. §44108(b).
¶12 Here, both parties recorded their respective interests with the FAA. 
Harley Davidson filed its purchase money security interest on June 21, 2006, and 
IJS filed its lien with the FAA on March 23, 2009. Both liens being perfected by 
filing with the FAA, we must look to Oklahoma law to determine the priority of 
IJS's lien relative to Harley Davidson's purchase money security interest and 
whether the statute of limitations had lapsed on such lien by the time IJS 
sought to foreclose it.
POSSESSORY LIENS
¶13 IJS, citing Williamson v. Winningham, 1947 OK 231, 186 P.2d 644, maintains it has a 
common law possessory lien and not a statutory lien under either 42 O.S. §91 or 42 O.S. §91A.[4] All of the parties to this 
appeal cite Williamson to support their respective positions. This case 
from 1947 discusses the common law and Oklahoma's statutory lien scheme as it 
existed at the time. Basically, 42 
O.S. §91 "reiterates" an artisan's right to a possessory lien arising under 
common law. Williamson at ¶25, 186 P.2d at 650. With such common law 
liens, "[i]t is the right of a person to retain that which is in his possession, 
belonging to another, until certain demands against such other person are 
satisfied." Id. at ¶23, 186 P.2d at 650. "An artisan's lien for materials 
and labor expended in betterment of personal property, existing under the common 
law, where in the eyes of the law, ... the artisan has right of possession, may 
constitute a lien, limited by statute." Id. at ¶28, 186 P.2d at 
650 (emphasis added).
¶14 Williamson recognized statutory enactments may abrogate the common 
law. This concept is also codified in our statutes. Section 2 of Title 12 
provides in relevant part:

 
 The common law, as modified by constitutional and statutory law, 
 judicial decisions and the condition and wants of the people, shall remain 
 in force in aid of the general statutes of Oklahoma.... 12 O.S. 2011 
§2.
(Emphasis added.) At the time Williamson was decided, §91A had not 
been enacted and §91 merely restated the right existing under the common law. 
Section 91 applied to possessory liens for all types of personal property but 
did not contain any of the current notice requirements or foreclosure sale 
procedures. Compare R.L. 1910 §3852 and 42 O.S. 2011 §91.
¶15 As originally enacted and as it read at the time of the Williamson 
decision, the text of R.L. 1910 §3852 read as follows:

 
 Lien for services rendered on article. Every person who, while 
 lawfully in possession of an article of personal property, renders any 
 service to the owner thereof by labor or skill employed for the protection, 
 improvement, safe-keeping or carriage thereof, has a special lien thereon, 
 dependent on possession, for the compensation, if any, which is due to him 
 from the owner for such service.
This statute was first enacted in 1910 and remained substantially the same 
until a major overhaul in 2005.[5] 2005 Okla. Sess. Laws, ch. 213, §4, ch. 477, §1 
(codified at 42 O.S. Rev. Supp. 
2005, §91) (effective Nov. 1, 2005). Prior to 2005, §91 covered possessory 
liens for all types of personal property. The 2005 changes to Title 42 split off 
vehicles titled by the Oklahoma Tax Commission ("OTC") or a federally recognized 
Indian tribe in the State of Oklahoma. 2005 Okla. Sess. Laws, ch. 213, §4, ch. 
477, §1 (codified at 42 O.S. Rev. 
Supp. 2005, §91) (effective Nov. 1, 2005). Those certificate of title 
vehicles were covered under §91 while all other types of personal property, 
except for farm equipment as defined in §91.2, were covered under §91A. 
Id. at ch. 213, §§1-2, ch. 477, §§1-2 (codified at 42 O.S. Rev. Supp. 2005, §§91, 91A, 
and 91.2) (effective Nov. 1, 2005). The 2005 changes also included procedures 
for foreclosing §91A property. Id. at ch. 477, §2 (codified at 42 O.S. Rev. Supp. 2005, §91A) 
(effective Nov. 1, 2005). Additional changes in 2006 rectified some internal 
inconsistencies in Title 42 and further refined foreclosure procedures for §91A 
personal property. 2006 Okla. Sess. Laws, ch. 247, §2 (codified at 42 O.S. Supp. 2006, §91A) 
(effective Nov. 1, 2006).
¶16 Since Williamson was decided, the statutes covering possessory 
liens on personal property have changed significantly.[6] Currently, §91A covers possessory 
liens for all types of personal property which do not have a certificate of 
title issued by the OTC or a federally recognized Indian tribe in the State of 
Oklahoma.[7] 42 O.S. 2011 §91A(A)(1)(a) - (b). 
It is a catch-all provision intended to govern possessory liens on items of 
personal property which do not fall under either §§91 or 91.2. As "vehicle[s]" 
which "ha[ve] a certificate of title that is not issued by the Oklahoma Tax 
Commission or by a federally recognized Indian tribe in the State of Oklahoma," 
titled aircraft fall under the purview of §91A. Thus, any lienholder, like IJS, 
who claims a possessory lien on aircraft for "furnishing storage, rental space, 
material, labor or skill for the protection, improvement, safekeeping, towing, 
right to occupy space, storage or carriage thereof" does so pursuant to 42 O.S. 2011 §91A.[8] Common law possessory liens 
on aircraft have been subsumed into §91A along with the additional requirement 
that such liens be filed with the FAA rather than with the county clerk. 49 
U.S.C.A. §44108(b); McCormack, ¶16, 571 P.2d at 838.
¶17 Presently, for items of personal property covered by §91A, there is no 
deadline for providing notice to the owner or secured creditor (if any) of the 
existence of the possessory lien, 42 
O.S. 2011 §91A,[9] except for the requirement that a lien statement be 
filed with the county clerk within sixty (60) days of the work being performed 
pursuant to 42 O.S. 2011 §98.[10] Notice need 
only be given when the lienholder wishes to foreclose its lien by a sale as 
provided in subsection (A)(3). Section 91A(A)(3) sets forth procedures for a 
non-judicial foreclosure sale of the subject personal property.
¶18 Here, IJS maintained possession of the subject aircraft from the time it 
accepted delivery from Blue Sky[11] but did not seek to foreclose its lien by the 
procedures set forth in §91A(A)(3). Rather, Blue Sky brought a replevin action 
against IJS for the recovery of the aircraft. In its answer and counterclaim, 
IJS asserted it was entitled to payment from Blue Sky for the cost of labor and 
parts used in the repair of the aircraft, plus storage fees, interest, and 
attorneys fees and sought the permission of the trial court to "foreclose its 
lien and sell the aircraft as allowed by Oklahoma law."[12] Before any sale with the 
attendant notice requirements could be held, the trial court granted summary 
judgment in favor of Harley Davidson finding the statute of limitations had 
lapsed for IJS to foreclose its lien. Thus, we must examine whether IJS was 
within the statutory time to foreclose its perfected §91A possessory lien on the 
subject aircraft.
LIMITATION PERIOD FOR ENFORCING §91A LIENS
¶19 We disagree with the trial court's determination that IJS must have 
enforced its lien within sixty days of filing with the FAA under 42 O.S. 2011 §91A(B)(3). Instead, 
we find that provision applies only when the lienholder has lost possession as 
described in subsections (B)(1) and (B)(2). Here, IJS maintained possession of 
the aircraft until the court approved sale. Its lien retained the same 
characteristics when attached to the sale proceeds. The only other time 
limitations provided in §91A concern the notice of the sale, 42 O.S. §91A(A)(4)[13] and mandate that 
foreclosure proceedings "shall not be commenced until thirty (30) days after 
said lien has accrued," 42 O.S. 
§91A(A)(6). By the very terms of §91A, the lien continues so long as the 
lienholder retains possession. Section 91A(A)(2) provides in pertinent part:

 
 Any person who, while lawfully in possession of an article of 
 personal property to which this section applies, renders any service to the 
 owner thereof by furnishing storage, rental space, material, labor or skill 
 for the protection, improvement, safekeeping, towing, right to occupy space, 
 storage or carriage thereof, has a special lien thereon, dependent on 
 possession, for compensation, if any, which is due to such person from 
 owner for such service.
(Emphasis added.) Thus, we must look to other portions of Title 42 for the 
statute of limitation for §91A liens.
¶20 Both Harley Davidson and Blue Sky argue 42 O.S. 2011 §§95 and 100 apply. 
Section 95 provides "proceedings under this act shall be commenced within eight 
(8) months after the work is done." We note that the statute itself has a 
footnote after the word "act" which notes "act" refers to Title 42, §92 et 
seq. By the terms of §95, its limitation period only applies to the lien 
described in §92. This is further supported by the legislative history of §92 
et seq. Sections 92-96 of Title 42 were all part of House Bill No. 117[14] passed by 
the Second Legislature on March 20, 1911. 1910-11 Okla. Sess. Laws, ch. 114, 
p.254, §§1-5 (now codified at 42 O.S. 2011 §§92-96). Thus, the eight (8) month 
limitation contained in §95 applies to §92-96 and not §91A.
¶21 Section 100 provides as follows:

 
 Said lien may be foreclosed by the sale of the property so covered any 
 time within twelve (12) months in the same manner provided by for law for 
 the foreclosure of chattel mortgages. 42 O.S. 2011 
§100.
"Said lien" to which §100 refers is the lien provided for in §97. Like 
§§92-96, §§97-102 were passed as a part of the same bill; specifically, House 
Bill No. 654[15] passed by the Sixth Legislature on March 27, 1917. 
1917 Okla. Sess. Laws, ch. 187, p.350, §§1-8 (now codified at 42 O.S. 2011 
§97-102). Each section within the bill became a different section of Title 42.[16] Section 1 
of House Bill No. 654, which describes the lien, became 42 O.S. 2011 §97, and §4, which 
provides for the twelve month limitation on the foreclosure sale, became 42 O.S. 2011 §100.[17] Because the limitations 
period provided in §95 or §100 does not apply to the lien provided for in §91A, 
we must look to other portions of Title 42 for the limitations period. The rest 
of the sections in Chapter 2 of Title 42, specifically §§111 through 121 and 
§§131 through 132, deal with specific subject matter. Sections 111 through 121 
involve liens claimed by threshers and combiners, and §§131 through 132 deal 
with blacksmiths, wheelwrights, and horseshoers. None of these sections apply to 
§91A possessory liens. We instead turn to Chapter 1 of Title 42 - General 
Provisions.
¶22 Chapter 1 of Title 42 provides that a lien is created "by contract of the 
parties; or by operation of law." 42 
O.S. 2011 §6. Here, IJS's possessory lien pursuant to 42 O.S. 2011 §91A arose by 
operation of law as the record does not show any agreement, express or implied, 
between the parties to create a lien on the aircraft. See Phoenix Mutual Life 
Ins. Co. v. Harden, 1979 OK 
93, ¶6, 596 P.2d 888, 890 
("Intention to create a lien on property must clearly appear from the language 
of some instrument and attendant circumstances."). Title 42 O.S. 2011 §7 further provides 
"[n]o lien arises by mere operation of law until the time at which the act to be 
secured thereby ought to be performed." Title 42 O.S. 2011 §23 provides in 
pertinent part "[a] lien is extinguished by the mere lapse of the time within 
which . . . an action can be brought on the principal obligation." When read 
together with the continued possession requirements of §91A and in the context 
of the present case, those statutes establish IJS's lien arose at the time Blue 
Sky was obligated to pay for the repairs. IJS can enforce such lien so long as 
it retains possession of the aircraft and the statute of limitations on the 
underlying debt has not lapsed.
¶23 IJS retained possession of the aircraft to secure payment for the repairs 
it performed with the alleged consent of Blue Sky. The parties agree the 
aircraft was delivered to IJS on or about December 5, 2008. IJS maintains it 
provided its final invoice to Blue Sky demanding payment on January 26, 2009, 
and the record shows IJS filed its lien with the FAA on March 23, 2009. Oklahoma 
law is clear that IJS's lien was not perfected until it filed the lien with the 
FAA, see paragraphs 9-11, supra, but that is not when IJS's right 
to payment arose. Rather, IJS's right to payment arose when it completed repairs 
as consented to by Blue Sky, which appears to be sometime in January 2009.[18] Even if IJS 
became entitled to payment as early as December 5, 2008 when the aircraft was 
first delivered to IJS, the statute of limitations had not run on Blue Sky's 
underlying obligation to pay for repairs rendered.
¶24 The principal obligation underlying IJS's claim of lien is the repair 
work IJS performed on the aircraft which was done, according to IJS, either by 
verbal or written agreement. We agree with IJS that the statute of limitation 
for breach of an agreement is either three years or five years depending on 
whether the agreement is verbal or written. 12 O.S. 2011 §95(A)(1) and (2). 
Because IJS's lien potentially arose, at the earliest, when it accepted delivery 
on December 5, 2008, its lien lapsed, at the earliest, within three years of 
that date, or December 5, 2011. All parties agree IJS first sought to foreclose 
its lien by the filing of its counterclaim on May 10, 2010, well within the 
earliest possible limitation period.
PRIORITY OF IJS's §91A LIEN
¶25 Unlike §91, §91A does not discuss the priority of such possessory 
liens.[19] 
Additionally, for the same reasons as discussed in paragraphs 20 and 21, 
supra, neither §§96 nor 99 discussing the priority of each subject lien, 
apply to §91A. Rather, the Uniform Commercial Code ("UCC"), 12A O.S. 2011 §1-101 et seq. 
provides for priority of such possessory liens. Specifically, 12A O.S. 2011 
§1-9-333 provides "[a] possessory lien on goods has priority over a security 
interest in the goods unless the lien is created by a statute that expressly 
provides otherwise." Here, the statute creating the lien, 42 O.S. 2011 §91A, does not provide 
otherwise. Thus, UCC §1-9-333 governs, and IJS's §91A possessory lien, if valid, 
is superior to Harley Davidson's security interest and the trial court's grant 
of summary judgment must be reversed.
VALIDITY OF IJS's CLAIM OF LIEN
¶26 Because the claims between Blue Sky and IJS remain outstanding, we cannot 
determine whether IJS had a valid lien such that the claims between IJS and 
Harley Davidson can be resolved. Pursuant to the terms of 42 O.S. 2011 §23, "[n]o lien arises 
by mere operation of law until the time at which the act to be secured thereby 
ought to be performed." Additionally, §91A provides such possessory liens arise 
"for the compensation, if any, which is due to such person from the 
owner for such service." 42 O.S. 
2011 §91A(2) (emphasis added). Here, not only is there a question about 
when the obligation to pay arose (when IJS accepted delivery, when the 
work on the aircraft was completed, or when the final invoice was delivered to 
Blue Sky), but there also remains a question of fact as to whether Blue Sky was 
ever obligated to pay IJS for the repairs. Blue Sky maintains it delivered the 
aircraft to IJS for the limited purpose of inspection while IJS maintains it was 
authorized to make repairs as consented to by Blue Sky and as mandated by FAA 
maintenance requirements. If Blue Sky did not give permission to IJS for the 
repairs, no obligation to pay ever arose, and thus no lien exists which can be 
prior to Harley Davidson's security interest. On the other hand, if Blue Sky 
consented to the repairs performed by IJS, Blue Sky became obligated to pay for 
such repairs. Thus IJS's lien would be valid and superior to Harley Davidson's 
lien and IJS was within the statutory time for foreclosing such lien. 
Additionally, we note there appears to be some question as to whether the repair 
work undertaken by IJS was rendered to the owner of the aircraft. The deposition 
of Dennis Braner indicated uncertainty may exist as to whether IJS performed the 
repairs for the owner of the aircraft or for someone else who may or may not 
have been an authorized agent.
¶27 Because there remains a question of fact as to whether Blue Sky consented 
to the repairs performed by IJS creating an obligation to pay giving rise to 
IJS's lien, the decision of the trial court is REVERSED and REMANDED for further 
proceedings consistent with this opinion.

BELL, P.J., and GOREE, J., concur.

FOOTNOTES

[1] Blue 
Sky's amended petition also included claims for conversion, fraud, and slander 
of title.

[2] The 
minute order granting summary judgment in favor of Harley Davidson was entered 
on February 9, 2012. IJS filed its motion for new trial/reconsideration on 
February 17, 2012. IJS attached the journal entry entered March 6, 2012 to its 
petition in error as the underlying judgment of which it seeks review. Because 
this March 6th order specifically referenced the findings and conclusions 
contained in the minute order, we looked to the minute order for the trial 
court's reasoning behind its ruling in favor of Harley Davidson. IJS also 
attached the trial court's order entered April 11, 2012 denying its motion for 
new trial/reconsideration to its amended petition in error. Although IJS 
arguably filed its motion for new trial/reconsideration on February 17, 2012 
before the trial court actually granted summary judgment in favor of 
Harley Davidson on March 6, 2012, there is no question that this matter is 
properly before this Court on appeal.

[3] As 
noted by Harley Davidson, although summary proceedings are inconsistent with the 
request for a "trial," the request for a new trial upon reconsideration of the 
prior summary proceeding is allowable under the statutory scheme. Bank of 
Okla. N.A. v. Red Arrow Marina Sales & Serv., 2009 OK 77, 224 P.3d 685.

[4] IJS 
argues, in the alternative, that if one of these statutes governs its lien, it 
is §91A and not §91.

[5] For a 
discussion of the 2005 and 2006 changes to 42 O.S. §§91 et seq., see 
Charles Cheatham, Oklahoma Legislation: Financial Exploitation; Security 
Freezes; and Liens on Certificate of Title Goods, 61 Consumer Fin. L.Q. Rep. 
426, 438-44 (2007).

[6] In 
addition to the changes to 42 O.S. 
§91 et seq., substantial changes were made to the laws governing 
liens on items of personal property stored in self storage facilities, The 
Self-Storage Facility Lien Act, 42 O.S. §§191-200, and to the laws governing 
liens on manufactured homes, 42 O.S. 
§180.

[7] The 
Self-Storage Facility Lien Act makes clear that should both that Act and §91A 
apply to the personal property at issue, the provisions of The Self-Storage 
Facility Lien Act, 42 O.S. §191 
et seq. will apply. Because this matter does not involve a self-storage 
facility, the provisions of §91A apply.

[8] We 
reject any argument that IJS had a laborer's lien as provided in 42 O.S. 2011 §§92 or 97. It is an 
axiomatic rule of statutory construction that whenever a general statute and a 
specific statute conflict, the terms of the specific statute control. Duncan 
v. City of Nichols Hills, 1996 OK 
16, ¶27, 913 P.2d 1303, 1310. 
There is a specific mandate that possessory liens on vehicles which have a 
certificate of title that is not issued by the OTC or a federally recognized 
Indian tribe in the State of Oklahoma fall under the purview of §91A. 
Additionally, unlike the §91A lien claimed by IJS, liens claimed pursuant to 
§§92 or 97 are not dependent on the lienholder's continued possession of the 
subject personal property.

[9] 42 O.S. §91A was last amended in 
2008. 2008 Okla. Sess. Laws, ch. 98, §2 (codified at 42 O.S. Supp. 2009 §91A (effective 
July 1, 2008)). The text of the statute remained the same from the time the 
repairs were made to the aircraft to the present day. For ease of reference, 
citation will be made to the 2011 Oklahoma Statutes when referring to §91A as it 
applies to this case.

[10] As 
discussed in paragraphs 10-12, supra, filing a lien statement with the 
county clerk is not required to perfect a possessory lien on aircraft.

[11] IJS 
maintained actual possession of the subject aircraft until the time of the court 
approved sale. Both IJS and Harley Davidson released their liens on the aircraft 
and attached them to the proceeds of the sale. By order of the trial court, the 
liens retained the same characteristics when attached to the sale proceeds as 
they would have had if still attached to the aircraft.

[12] We 
note that court permission is not required under §91A to foreclose a lien by 
sale. However, in this case, the parties were already engaged in litigation when 
IJS sought to foreclose its lien.

[13] 42 O.S. §91A(A)(4) provides that 
the sale notice shall be posted "at least ten (10) days before the time . . . 
specified for the sale." Here, no such notice was yet posted.

[14] "An 
Act creating a lien for wages for laborers and employees, and providing the 
procedure to enforce same." 1910-11 Okla. Sess. Laws, ch. 114, p. 254, 
§§1-5.

[15] "An 
Act providing for a lien on personal property for labor, money, material or 
supplies in the producing of, altering or repairing of said personal property, 
repealing §3858, Revised Laws of Oklahoma, 1910, and providing a procedure for 
foreclosing lien, and declaring an emergency." 1917 Okla. Sess. Laws, ch. 187, 
p.350, §§1-8.

[16] We 
note that 42 O.S. §98 was amended 
in 1992 to apply to all of Chapter 2 of Title 42, including §91A. 1992 Okla. 
Sess. Laws, ch. 310, §2 (codified at 42 O.S.Supp. 1992, §98) (effective 
Sept. 1, 1992). However, as discussed in paragraphs 9-11, supra, the only 
recordation requirements necessary for the perfection of a lien on aircraft is 
that such lien be filed with the FAA. The additional recordation requirements of 
§98 are supplanted by federal law.

[17] The 
Historical and Statutory Notes ("notes") of 42 O.S. 2011 §100 state §100 was 
derived from §3 of 1917 Okla. Sess. Laws, ch. 187, p. 351 (House Bill No. 654), 
while the notes to 42 O.S. 2011 
§99 (Priority of mortgage liens) state §99 was derived from §4 of 1917 Okla. 
Sess. Laws, ch. 187, p. 351 (House Bill No. 654). We suspect that this is a 
scrivener's error as §3 of the session laws is identical to 42 O.S. 2011 §99 and 
§4 of the session laws is identical to 42 O.S. 2011 §100.

[18] 
Portions of the deposition transcript of Dennis Braner attached to IJS's 
response to Blue Sky's motion for summary judgment indicate IJS requested a 
deposit of $130,000 in December 2008 to start repairs on the aircraft. According 
to Mr. Braner, IJS agreed to proceed with repairs without the deposit, and Blue 
Sky agreed to pay the deposit by January 7, 2009. No deposit was ever received 
by IJS. Mr. Braner stated the work on the aircraft was completed January 20, 
2009 and the final invoice was completed January 26, 2009.

[19] 
Title 42 O.S. 2011 §91 
subordinates the possessory lien provided for in that statute to perfected 
security interests unless certain notice and consent requirements are 
met.





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 1987 OK CIV APP 42, 744 P.2d 218, 58 OBJ 1613, Bank of Oklahoma City Plaza v. Martin
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1993 OK 85, 859 P.2d 1081, 64 OBJ 2009, Kluver v. Weatherford Hosp. Authority
Discussed 1947 OK 231, 186 P.2d 644, 199 Okla. 393, WILLIAMSON v. WINNINGHAM
Discussed 2004 OK 84, 102 P.3d 670, HEAD v. McCRACKEN
Discussed 1996 OK 16, 913 P.2d 1303, 67 OBJ 536, Duncan v. City of Nichols Hills
Discussed 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed 2009 OK 77, 224 P.3d 685, BANK OF OKLAHOMA v. RED ARROW MARINA SALES & SERVICE
Discussed 1977 OK 192, 571 P.2d 835, McCORMACK v. AIR CTR., INC.
Discussed 1979 OK 93, 596 P.2d 888, PHOENIX MUT. LIFE INS. CO. v. HARDEN
Discussed 1999 OK 79, 989 P.2d 448, 70 OBJ 2752, Manley v. Brown
Discussed
Title 12. Civil Procedure Cite
Name
Level 12 O.S. 95, Limitation of Other Actions
Cited 12 O.S. 2, Common Law to Remain in Force in Aid of General Statutes
Cited 12 O.S. 951, Judgment by Court Inferior in Jurisdiction to District Court
Cited 12 O.S. 994, Procedure When There is More Than One Claim or Party - Final Judgment
Cited
Title 42. Liens Cite
Name
Level 42 O.S. 91, Lien on Personal Property for Service Thereon - Foreclosure - Notice - Purchaser - Unpaid Checks
Discussed at Length 42 O.S. 91A, Lien on Personal Property for Furnishing Certain Services to Owner - Foreclosure - Notice - Purchasers - Applicability
Discussed at Length 42 O.S. 6, Creation of Liens
Cited 42 O.S. 7, No Lien Arises by Operation of Law
Cited 42 O.S. 23, Extinguishing of Lien by Lapse of Time
Discussed 42 O.S. 92, Lien Created
Cited 42 O.S. 95, Time For Enforcement
Discussed at Length 42 O.S. 97, Liens Personal Property
Cited 42 O.S. 98, Filing with County Clerk - Recording of Clerk
Discussed at Length 42 O.S. 99, Liens - Mortgages
Cited 42 O.S. 100, Lien Foreclosed by Sale of Property
Discussed at Length 42 O.S. 180, Possessory Lien Against Manufactured Home for Storage - Priority
Cited 42 O.S. 191, Short Title
Cited
Title 12A. Uniform Commercial Code Cite
Name
Level 12A O.S. 1-101, Short Titles
Cited