**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 8, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

SARAH LEE GOSSETT PARRISH,

Plaintiff - Appellant,

v.

ARVEST BANK,

Defendant - Appellee.

No. 18-6133
(D.C. No. 5:15-CV-00913-HE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MORITZ**, and **EID**, Circuit Judges.
_____

Sarah Lee Gossett Parrish contends that Arvest Bank breached its Electronic

Fund Transfer ("EFT") Agreement by providing inaccurate account balance

information through its online and mobile banking platforms, causing her to incur

unexpected overdraft fees.  In the second appeal in this case, Parrish challenges the

district court's order granting summary judgment to Arvest on her breach of contract

claim.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

Arvest is an Arkansas-chartered bank with over 250 locations scattered throughout Arkansas, Kansas, Missouri, and Oklahoma. Parrish has had multiple accounts with an Arvest branch in Oklahoma since 1997.

In 2015, Parrish filed a putative class action against Arvest related to its electronic banking services and its online and mobile banking tools.[1] The operative (second amended) complaint ("SAC") asserted claims for actual fraud; constructive fraud; false representation/deceit; breach of fiduciary duty; breach of contract (namely, the EFT Agreement), with a sub-claim for breach of the implied covenant of good faith and fair dealing; and unjust enrichment. Parrish alleged that she regularly used her online and mobile banking access to check her account balances and frequently based her purchase decisions on the balances displayed through these platforms. She accused Arvest of employing suspect debiting practices—such as batching by transaction type[2] and reordering transactions at the end of the day to maximize fees rather than processing them chronologically, failing to show real-time balance information online, and not processing intra-account transfers

---

[1] Because judgment was entered before a class was certified, we do not recount or consider the allegations on behalf of the putative class.

[2] Parrish alleged that Arvest grouped and posted transactions in the following order: point-of-sale transactions, other debit transactions, check transactions, Automated Clearing House ("ACH") transactions, and other transactions. *See* Aplt. App. at 18.

2

instantaneously.  According to Parrish, these practices sometimes resulted in insufficient funds and overdraft fees in her account.

The district court dismissed all claims under Federal Rule of Civil Procedure 12(b)(6).  On appeal, this court reversed and remanded as to the breach of contract claim but affirmed the dismissal of her other claims, including the sub-claim. *See Parrish v. Arvest Bank*, 717 F. App'x 756 *passim* (10th Cir. 2017).  Limiting our review to the language of the EFT Agreement, we found that Parrish had alleged enough facts to state a plausible claim for breach of contract under the standard applicable to Rule 12(b)(6) motions.  *See id.* at 764.  We emphasized that the EFT Agreement "tells customers they can use Arvest's online and mobile banking platforms to check their account balances and the credits and debits *that have posted to* their accounts," *id*.  We determined that Parrish's "example of Arvest not carrying out an intra-bank transfer, while displaying the transfer as completed," *id.*, could be an inaccurate posting and therefore remanded.

On remand, the SAC set the parameters for what remained of the contractual claim because Parrish never sought to amend it.  The SAC alleged that a contract was formed "[w]hen [Parrish] . . . submitted to the EFT Agreement" and that "Arvest agreed, among other things, to provide an accurate and reliable online and mobile banking platform upon which [she] could rely."  Aplt. App. at 35.  It then defined reliability as being "'current' and in real-time."  *Id.*  The SAC further alleged that Arvest breached the contract by providing inaccurate balances and by not reflecting the transfer of money as promised, causing Parrish to overdraw her account.  With

3

respect to promises made about transfers, it alleged that "Arvest does not instantaneously process intra-bank transfers, even when it represents that it has done so," *id*. at 26.

Arvest ultimately filed a motion for summary judgment on two grounds. First, Arvest argued that the breach of contract claim is precluded by the clear, unambiguous terms of two related, supplemental agreements—"Online Banking Terms and Conditions" and the "Mobile Banking Addendum"—which are incorporated into the EFT Agreement and take precedence in the event of a conflict.[3] All online customers must agree to the provisions therein, which state that Arvest's online and mobile banking applications are not warranted to be error-free and which disclaim any liability regarding performance, inaccuracy, or reliability. Second, and in the alternative, Arvest argued that Parrish cannot show the information displayed on her online account caused her to incur overdraft fees she would not have otherwise incurred, given the timing of the various transactions.

Parrish responded that summary judgment is inappropriate because there is a genuine issue of material fact. Through an affidavit, she proffered six examples to support her breach of contract claim, none of which were included in the SAC. The

---

[3] By their terms, the Online Banking Terms and Conditions control over the EFT Agreement in the event of a conflict, whereas the Mobile Banking Addendum controls over the Online Banking Terms and Conditions. The EFT Agreement is therefore subordinate to both supplemental agreements. These documents were not before us during the first appeal because a court must limit its review to the contents of the complaint when assessing a Rule 12(b)(6) motion. But Arvest authenticated and attached the various iterations of the agreements to its summary judgment motion. *See* Aplt. App. at 118-59.

first five examples were transactions for which Parrish purportedly incurred overdraft fees due to Arvest's practice of reordering and batch processing her transactions at night, rather than processing them in chronological order. The sixth example was a two-day period when the balance in her business account fluctuated at night after an intra-bank transfer even though no additional activity occurred.

Turning to Arvest's legal arguments, Parrish maintained that the liability disclaimer in the supplemental agreements is ineffective under Arkansas's Uniform Commercial Code, which she contends applies even though the contract at issue does not involve the sale of goods. Likewise, she argued that the disclaimer would be ineffective if Oklahoma law governed because the EFT Agreement and the supplemental agreements are unenforceable adhesion contracts.

The district court granted Arvest's motion and again entered judgment against Parrish. As a threshold matter, it determined that the EFT Agreement promises accuracy only as to posted amounts (not pending or unprocessed transactions), yet Parrish "has offered no evidence suggesting that the bank at any time inaccurately reported posted transactions," _id_. at 233. Instead, she "relies on the impact of the eventual posting of other transactions which were pending on the same day she made the various transfers resulting in overdrafts," _id._ The district court also found Parrish's claim about the timing of transfers to be inconsistent with the Online Banking Terms and Conditions, which specifies a 7:00 p.m. cut-off for the posting of transfers. Transfers initiated before that time are posted on the same business day, whereas transfers initiated after that time are not posted until the next business day.

5

*See id*. at 129.  Finally, the district court rejected Parrish's arguments about the disclaimer under both Arkansas and Oklahoma law.  Parrish filed this timely appeal.

**Analysis**

We review the district court's grant of summary judgment de novo, applying the same standard that the district court applied.  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).  Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Stated otherwise, "[t]he moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071 (10th Cir. 1998) (alteration and internal quotation marks omitted).  "When applying this standard, we examine the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *Id.*

Parrish argues that the district court erred in finding that (1) the EFT Agreement does not guarantee Arvest will provide accurate balances through its online and mobile banking platforms; (2) she failed to offer evidence demonstrating Arvest provided inaccurate balances through its online and banking platforms; and (3) her breach of contract claim is precluded by the warranty disclaimer in the supplemental agreements. We are not persuaded by the first two arguments, and it is unnecessary to reach the third one.

6

## A. Plain Language of the Parties' Agreement

Although this court applied Oklahoma law in resolving the first appeal, the parties alternately reference Arkansas and Oklahoma law in their briefs for this second appeal. The uncertainty arises because Parrish is an Oklahoma resident, and the law where the contract was made applies in contract actions per Oklahoma choice-of-law principles. *See Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1033-34 (Okla. 2006). Yet a choice-of-law provision in the Online Banking Terms and Conditions designates Arkansas law as governing "to the extent there is no applicable Federal law or regulation." Aplt. App. at 127, 133; *see also id.* at 139 (different version designating Arkansas law as governing "to the extent applicable"). We need not decide which law applies because the same principles guide our analysis either way.

We examine the plain language of the parties' agreement when that language is clear and unambiguous. *See Roth v. Prewitt*, 283 S.W.2d 155, 157 (Ark. 1955); *Bank of Okla., N.A. v. Red Arrow Marina Sales & Serv., Inc.*, 224 P.3d 685, 700 (Okla. 2009). Further, "[i]t is our duty to interpret instruments by trying to make all parts of the instrument harmonize, and stand together, if possible, so as to ascertain the intention of the parties." *Anadarko Petroleum Co. v. Venable*, 850 S.W.2d 302, 306 (Ark. 1993); *accord McGinnity v. Kirk*, 362 P.3d 186, 199 (Okla. 2015) ("A contract is to be construed as a whole, giving effect to each of its parts, and not construed so as to make a provision meaningless, superfluous or of no effect." (footnotes omitted)).

Applying these principles, we agree with the district court's well-reasoned analysis of the contractual provisions addressing the accuracy of account balances and the timing of transfer postings. When we addressed Arvest's promise of accuracy during the first appeal, we emphasized that "the [EFT Agreement] tells customers they can use Arvest's online and mobile banking platforms to check their account balances and the credits and debits *that have posted to* their accounts." *Parrish*, 717 F. App'x at 764; *see also* Aplt. App. at 42 (EFT Agreement). Echoing the district court, we pointed out the critical distinction between posted and pending transactions. Even so, Parrish continues to fault Arvest for not providing real-time balances. Simply put, her argument disregards the plain language of the EFT Agreement, which specifically addresses posted transactions but says nothing about pending ones.

Parrish fares no better with her transfer argument, which depends on the erroneous premise that Arvest promised instantaneous intra-bank transfers. *See, e.g.*, Aplt. App. at 17-18 (alleging in the SAC that "Arvest transfers the funds [for intra-bank transfers] instantly, regardless of whether the transaction is performed in-person or remotely"); *id.* at 26 (alleging that "Arvest does not instantaneously process intra-bank transfers, even when it represents that it has done so, and even when standard banking practices provide that this be accomplished"); *id.* at 27 (alleging that the EFT Agreement "states customers may rely upon online and mobile banking . . . to make instantaneous transfers between Arvest accounts"). As the district court noted, the Online Banking Terms and Conditions include a 7:00 p.m.

8

cut-off for the posting of transfers, which contradicts Parrish's premise. After the first appeal, an open question existed as to whether Arvest had failed to post an intra-bank transfer in accordance with the EFT Agreement. Now that the supplemental agreements are properly before us, it is clear Arvest was not contractually obligated to make intra-bank transfers instantaneously.

For these reasons, the district court did not err in its interpretation of the applicable agreements.

### B. No Genuine Issue as to Any Material Fact

Similarly, we discern no error in the district court's evaluation of the evidence Parrish presented to try to create a genuine issue of material fact. Parrish identified six discrete occasions on which Arvest allegedly breached its contract with her. Assuming it is even appropriate for Parrish to raise these examples given their absence from the SAC, none of them defeat summary judgment.

The first five occasions relate to Arvest's batching and reordering process and Parrish's contention that she incurred additional fees because her transactions were not processed chronologically as promised; in other words, she would not have been penalized for some of the smaller transactions had Arvest processed her transactions in order (though she concedes she anticipated some penalties). Without pointing to any particular contract language, Parrish argues that this practice affected the accuracy of her account.

Parrish does not clearly articulate how this alleged practice supports her breach of contract claim. In any event, we held in the first appeal that Parrish has

"not plausibly show[n]" the EFT Agreement "actually represents" that transactions "will be posted in chronological order." *Parrish*, 717 F. App'x at 761; *see also id.* at 760 (upholding the district court's conclusion that "the statement in the EFTA about accounts being debited 'each time' a customer uses a debit card 'does not say or imply that the posting will be instantaneous'"); *id.* at 761 (noting Parrish's acknowledgment that "she does not allege any such explicit representations in the EFTA . . . regarding chronological posting"). "[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal." *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995) (applying the law of the case doctrine). Further, this issue was part of Parrish's fraud claim, not her breach of contract claim, and was thus outside the scope of the remand. Accordingly, we will not revisit this argument here.

The sixth example relates to account activity on July 14, 2015. Parrish attached screenshots from her business account, which seem to show a fluctuating balance throughout the night even though no additional transactions posted to the account. This example cannot create a genuine issue of material fact because the account in question is a business account. *See* Aplt. App. at 200-02 (identifying account as "Business Checking"). By its terms, the EFT Agreement clearly applies only to accounts "held for personal, family or household purposes." *Id.* at 41. Moreover, even if this account was within the scope of the EFT Agreement, Parrish states that the fluctuation stems from Arvest's batch processing and reordering.

10

*See id.* at 198 (explaining that the online and mobile account balance reflected enough funds for an intra-bank transfer, but an overdraft fee was imposed after Arvest batched and reordered the transactions) (Parrish Aff.).  As we just explained, that process does not violate the contract.

### C.  Validity of Disclaimers

Because we conclude there was no breach of contract as a matter of law and because Parrish did not create a genuine issue of a material fact, we need not address whether the disclaimer in the supplemental agreements precludes her breach of contract claim.

### Conclusion

We affirm the judgment of the district court.  The EFT Agreement authorized Arvest to collect an overdraft fee "for each item presented against insufficient funds in [her] account" even when an ATM Card or CheckCard transaction "was preauthorized based on sufficient funds in the account at the time of withdrawal, transfer or purchase."  Aplt. App. at 45.  Arvest did just that.  Parrish's arguments to the contrary are inconsistent with the plain language of the parties' agreement.

Entered for the Court


Nancy L. Moritz
Circuit Judge

11